# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

NICK SHAFFER and CHARLA SHAFFER, )
Individually, and NICK AND CHARLA )
SHAFFER, as Parents and Next Friends of )
HOPE SHAFFER, Deceased, )
                             )
           Plaintiffs, )
                             )
v.                          )     Case No. 5:22-cv-00151-R
                             )
TOYOTA MOTOR CORPORATION, )
TOYOTA MOTOR NORTH AMERICA, )
INC., TOYOTA MOTOR ENGINEERING )
& MANUFACTURING NORTH )
AMERICA, INC., TOYOTA MOTOR )
MANUFACTURING MISSISSIPPI, INC., )
TOYOTA MOTOR SALES, U.S.A., INC., )
GULF STATES TOYOTA, INC., )
                             )
           Defendants. )

---

## TOYOTA DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

---

Mary Quinn Cooper, OBA #11966
Andrew L. Richardson, OBA #16298
Katie G. Crane, OBA #34575
MCAFEE & TAFT, P.C.
Williams Center Tower II
Two West Second Street, Suite 1100
Tulsa, Oklahoma 74103
Telephone: (918) 587-0000

David P. Stone, Texas Bar No. 19289060
Suzanne H. Swaner, Texas Bar No. 90001631
Tracy L.R. Kambobe, Texas Bar No. 24117392
NELSON MULLINS RILEY & SCARBOROUGH, LLP
5830 Granite Park, Suite 1000
Plano, Texas 75024
Telephone: (469) 484-6100
*Attorneys for Toyota Defendants*

August 23, 2024

Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Manufacturing Mississippi, Inc., Toyota Motor Sales, U.S.A., Inc., and Gulf States Toyota, Inc. (the "Toyota Defendants") move this Court pursuant to Fed. R. Civ. P. 56 for judgment on the strict liability claim and prayer for punitive damages asserted by Plaintiffs Nick Shaffer and Charla Shaffer, Individually, and Nick and Charla Shaffer, as Parents and Next Friends of Hope Shaffer, Deceased ("Plaintiffs").

## INTRODUCTION AND SUMMARY OF ARGUMENT

In their Complaint, Plaintiffs allege claims for (1) products liability; (2) negligence; (3) punitive damages; and (4) damages.  ECF No. 1-1, Compl., pp. 10-15.  The Toyota Defendants seek judgment as a matter of law on Plaintiffs' products liability claim because Plaintiffs' have failed to rebut the presumption that the 2020 Toyota Corolla (the "Subject Vehicle") was not defective by showing that the regulation at issue, Federal Motor Vehicle Safety Standard ("FMVSS 207"), was inadequate.  On June 28, 2024, the Texas Supreme Court held in *American Honda Motor Company, Inc. v. Milburn* that to rebut a presumption of non-liability due to alleged inadequacy of the at-issue regulation, a plaintiff must show "something more than a conclusion that the risks outweighed the benefits with respect to the particular product design at issue."  No. 21-1097, 2024 WL 3210146, at *11 (Tex. June 28, 2024).[1]  From the *Milburn* court:

> In enacting [Texas's rebuttable presumption statute], the
> Legislature made a policy decision that manufacturers at risk

---

[1] The *Milburn* opinion has not yet been released for publication in the permanent law reports and is subject to revision or withdrawal until it is.

> of liability for injuries caused by an allegedly defective design are entitled to rely on a federal agency's cogent determination that the pertinent risks associated with that design are not unreasonable . . . . Absent a comprehensive review of the various factors and tradeoffs NHTSA considered in adopting that safety standard, as a general matter neither we nor a jury can deem a particular regulation 'inadequate' to prevent an unreasonable risk of harm to the public as a whole . . . . No evidence was presented that NHTSA engaged in an improper or erroneous decision-making process in approving the regulation that authorized the [allegedly defective design].

*Id.* at *14. Here, Plaintiffs have not put forth a "comprehensive review of the various factors and tradeoffs NHTSA considered in adopting" FMVSS 207. *Id.* Plaintiffs have likewise failed to produce sufficient evidence that NHTSA "engaged in an improper or erroneous decision-making process" when it approved FMVSS 207. *Id.* Because of the lack of evidence put forth by Plaintiffs to rebut the Toyota Defendants nonliability, Plaintiffs' product liability claim must be dismissed because there are no disputed questions of material fact to support it.

The Toyota Defendants also seek judgment on Plaintiffs' punitive damages claim because, despite the opportunity to supplement discovery or produce a witness with evidence concerning the level of culpability necessary to insert a question of fact into the analysis, Plaintiffs have failed to do so. Thus, punitive damages are not available to them as a matter of law.

For these reasons, and those detailed herein, the Court should grant the Toyota Defendants' Partial Motion for Summary Judgment and dismiss Plaintiffs' products liability claim and prayer for punitive damages with prejudice.

## UNDISPUTED MATERIAL FACTS

1.    Plaintiffs allege in their Complaint:

> Defendants had actual knowledge of the danger to which the driver's seat system subjected rear seat occupants. In failing to warn the occupants and/or failing to design and/or manufacture a stronger seat, Toyota demonstrated an entire want of care, evidencing a reckless indifference and disregard to the consequences of their actions. Plaintiffs, pursuant to Oklahoma law, are entitled to an award of punitive damages to deter Defendants from such conduct in the future.

ECF No. 1-1, Compl., ¶ 77.

2.    In discovery, Toyota Motor North America, Inc. ("TMNA") asked Plaintiffs for "documents relating to any act or omission that you contend shows that Defendants intentionally or malicious harmed Plaintiffs, or acted in conscious disregard of Plaintiffs' rights, and on which an award of punitive damages could be based." *See* Ex. 1, TMNA's First Request for Production ("RFP") to Pls. No. 18.

3.    Plaintiffs responded to TMNA's RFP No. 18 by objecting and stating:

> This Interrogatory is vague, overbroad, and seeks information that may be subject to the attorney-client and/or attorney work product privileges. Plaintiff also objects as this Request may invade the province of the jury. Without waiving any objection, Plaintiffs agree to provide the Defendants with their testifying expert witness information in compliance with the Court's Scheduling Order and/or as discovery progresses and develops in this case. As discovery is just beginning in this case, Plaintiffs reserve the right to supplement and/or amend their Response to this Request as discovery progresses and more information becomes available, if any.

*See* Ex. 2, Pls.' Resp. to TMNA's First RFP No. 18.

4.    Plaintiffs have not supplemented their response to TMNA's RFP No. 18.

3

5.     The Subject Vehicle complied with FMVSS 207.  *See* Ex. 3, Deposition of Stephen E. Meyer, P.E., at 78:2-9.

## STANDARD OF DECISION

Summary judgment should be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is not "genuine" if the non-movant can do no more than "simply show that there is some metaphysical doubt as to the material facts." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1084 (10th Cir. 2006). Only facts that affect the disposition of the substantive claim are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position [is] insufficient" for the non-moving party to avoid the imposition of summary judgment; "there must be evidence on which the [factfinder] could reasonably find for the [non-moving party]." *Id.* at 252.

## ARGUMENTS AND AUTHORITIES

I.     **Plaintiffs' Products Liability Claim Fails As a Matter of Law Because Plaintiffs Have Failed to Rebut the Presumption of Non-Defect**

Pursuant to Oklahoma's rebuttable presumption defense, the Toyota Defendants are not liable for any injury to Plaintiffs caused by the design of the Subject Vehicle if they establish that the design complied with or exceeded FMVSS 207.[2] 76 O.S. § 57.2(A).   If

---

[2] NHTSA promulgates the FMVSS in accordance with congressional direction to prescribe such standards for the purpose of "reduc[ing] traffic accidents and deaths and injuries resulting from traffic accidents." 49 U.S.C. § 30101. FMVSS 207 imposes certain strength criteria for seats, including the requirement that "in its rearmost position—a force that produces a 373 newton meters moment about the seating reference point for each

that showing is made, the ball is in Plaintiffs' court to rebut the presumption by showing: (1) FMVSS 207 was inadequate to protect the public from unreasonable risks of injury; or (2) the Toyota Defendants withheld or misrepresented information relevant to NHTSA's determination of adequacy of FMVSS 207. *Id.* § 57.2(B). Plaintiffs have failed to put forth evidence showing that FMVSS 207 is inadequate or that the Toyota Defendants withheld or misrepresented any information relevant to NHTSA's determination of adequacy, necessitating judgment in the Toyota Defendants' favor on Plaintiffs' products liability claim.

A.    Plaintiffs Fail to Show that FMVSS 207 is Inadequate

The Court should grant judgment to the Toyota Defendants on Plaintiffs' products liability claim because Plaintiffs have failed to rebut the Toyota Defendants' nonliability established by the Subject Vehicle's compliance with FMVSS 207.

"[A] determination that an applicable federal safety standard is inadequate to protect the public from unreasonable risks of injury requires something other than proof of a product's defective design—that is, something more than a conclusion that the risks outweighed the benefits with respect to the particular product design at issue." *Milburn*, 2024 WL 3210146, at *11. Rather, Plaintiffs must produce evidence showing, for example, "that NHTSA simply failed to consider the possibility of [injury to children in the backseat]

---

designated seating position that the seat provides, applied to the upper cross-member of the seat back or the upper seat back, in a rearward longitudinal direction for forward-facing seats and in a forward longitudinal direction for rearward-facing seats." 49 C.F.R. § 571.207. In layman's terms, this means that the seat must be able to withstand 3,300 pounds per square inch of force in a rear end crash.

or based its decision to allow [seats with a certain rigidity] solely on cost without any consideration for safety." *Id.* at *12.

Here, Plaintiffs have failed to produce any evidence that NHTSA did not consider the risks, like the injury complained of in this lawsuit, when adopting FMVSS 207. In fact, there is an abundance of evidence in the record that NHTSA is acutely aware of the risk, and upon careful balance of a variety of factors, has adopted a regulation that is adequate.

For example, in 1989 Kenneth Saczalski submitted a petition for rulemaking regarding FMVSS 207 to NHTSA. Ex. 4, Docket No. NHTSA-2024-0001, July 11, 2014 Advanced Notice of Proposed Rulemaking by NHTSA ("2024 ANPRM"), at 31. Mr. Saczalski sought an increase in the seat back moment requirement of FMVSS 207 from 3,300 in-lb to 56,000 in-lb "to reduce the incidence of injuries due to ramping and ejection in rear in crashes." *Id.* On July 24, 1989, NHTSA granted Mr. Saczalski's petition and published a request for comment. *Id.* at 31-32. NHTSA then commissioned a study on injury incidence to support a rulemaking decision using real-world crash data. *Id.* at 33. The study confirmed that seat back yield in severe rear crashes does occur, but severe crashes were infrequent, amounting to approximately 5% of all rear impacts. *Id.* The study also found that "impacts with components in the rear seat compartment and ejections are a relatively small portion of injuries" and that seat designs at the time provided reasonable safety in rear-end crashes. *Id.* at 33. NHTSA's study suggested new head restraint designs offered the best possibility to mitigate the largest portion of injuries in rear-end crashes, not new seat back strength requirements. *Id.* at 33. Thus, in 1992, NHTSA filed a summary report concluding that improving seating system performance would be more complex than

simply increasing the strength of the seat back, and that a proper balance in seat back strength and compatible interaction with head restraints and seat belts should be obtained to optimize injury mitigation. *Id.* at 33-34. This is but one of many instances in which, faced with a petition for a rulemaking change to FMVSS 207, NHTSA has considered the request, solicited comment, completed independent testing, and then published a report explaining why FMVSS 207's strength requirement provides adequate balance by allowing seats to absorb energy in all crashes, but especially in more common low speed crashes, to prevent the risk of whiplash. *See generally id.*

*Milburn*, recently decided by the Supreme Court of Texas, is illustrative given that Texas's rebuttal presumption defense is identical to Oklahoma's. *See* Tex. Civ. Prac. & Rem. Code Ann. § 82.008 *compared to* 76 O.S. § 57.2. There, the plaintiff brought a products liability action against Honda alleging that the seatbelt for the middle seat in the third row of a Honda vehicle was defectively designed. *Milburn,* 2024 WL 3210146, at *2. After a three-week trial, the jury found that the Honda vehicle complied with the at-issue FMVSS, but also, that the regulation was inadequate to protect the public from unreasonable risks of injury or damage. *Id.* at *4. The Texas Supreme Court reversed the court of appeals' judgment affirming the jury verdict and rendered a "take-nothing" judgment for Honda on the basis that no evidence supported a jury's finding that Honda's presumption of nonliability was rebutted. *Id.* at *15.

The court found that "defective design and regulatory inadequacy are necessarily independent inquiries." *Id.* at *12. Applied to the facts, that meant that the opinion of plaintiff's expert, Steven E. Meyer, P.E., that the standards were inadequate because the

7

"permitted [] design was unreasonably dangerous" was insufficient to establish inadequacy. *Id.* "[I]n other words, [Meyer] disagreed with NHTSA's conclusion that the permitted design was *not* unreasonably dangerous. Meyer's conclusory opinion that NHTSA got it wrong is not enough." *Id.* The court explained that "absent a comprehensive review of the various factors and tradeoffs NHTSA considered in adopting" the safety standard, neither a court nor a jury could "deem a particular regulation 'inadequate' to prevent an unreasonable risk of harm to the public as a whole." *Id.* at *14.

Meyer is the Plaintiffs' expert in this case as well and has opined that FMVSS 207 has been "clearly established to be inadequate relative to prediction of real-world crash performance." *See* Ex. 5, Expert Report of Steve E. Meyer, P.E., at 17. He explained in his Report that "compliance with the minimal standard of FMVSS 207 will not ensure a seat structure's safe design in a dynamic crash environment," like if the seat is "loaded dynamically in a rear end crash." *Id.* Meyer opined that tests by him and others "have shown that light weight folding beach chairs, banquet chairs, and even a seat made of cardboard" will pass FMVSS 207. *Id.*

As in *Milburn,* Meyer's analysis here is simply that NHTSA "got it wrong." 2024 WL 3210146, at *12. Meyer opines in his Report that the regulation should be different because it does not "ensure a seat structure's safe design in a dynamic crash environment." *See id.* Such a conclusory statement does not convey anything other than that Meyer thinks FMVSS 207 does not require seats, like the front passenger seat in the Subject Vehicle that complies with FMVSS 207, to be strong enough. That isn't sufficient to show inadequacy—all it shows is that Meyer disagrees with NHTSA's weighing of various

factors in adopting FMVSS 207 because, in this particular rear end crash in which the seat was "dynamically loaded," he opines the seat should have been stiffer. Meyer has the luxury of using 20/20 hindsight to design a seat for a single crash.[3] And missing from his single case analysis is a comprehensive review of the safety tradeoffs that real world automotive engineers and the NHTSA considered when evaluating the sufficiency of FMVSS 207, including the risk of whiplash injury, the undisputed benefits of energy absorption in low-speed crashes, instances of rear crashes, instances of severe rear crashes, and instances of rear crashes with occupants in the back seat, among other considerations. Likewise missing is a comprehensive review of the tradeoffs unrelated to safety that NHTSA must consider when adopting the FMVSS, including occupant use, misuse, and weight and expense.

Meyer also states that NHTSA has "officially acknowledged that the 207 standard is inadequate," *id.*, based on a quote from a B.01.19 Seat Back Strength Research Report, a research program developed with the goal of providing near and long-term support to NHTSA for "responding to petitions received by the agency regarding seat back strength" and "future considerations of upgrading [FMVSS 207]." *See* Ex. 6, B.01.19 Back Seat Strength Research Report, at 1. That report reads:

> There have been several valid criticisms of the current Federal Motor Vehicle Safety Standard No. 207 which addresses seating systems. Generally, it is acknowledged that the current

---

[3] In fact, Meyer opined during his deposition that "[i]n general . . . the seat should be designed to protect occupants up to and including the 95th percentile type ATD." *See* Ex. 3, Meyer Dep., at 48:13-19. Meyer came to this opinion because "[a] 95th [percentile] ATD is 225, 223 [pounds]," or a similar size to Mr. Voss, the front seat passenger in the Subject Vehicle and crash. *See id.*

> standard requires inadequate seat strength to ensure that the
> seat does not fail when a car is subject to a severe rear impact.
> Furthermore, advances in technology have made possible
> significant improvement in the ability of the car seat to add
> appreciable crash victim occupant protection, especially with
> the advent of integrated seat concepts.

*Id.* But this statement by parties commissioned to do a study for NHTSA shows only what

Meyer's statements do above: that the "permitted [] design was unreasonably dangerous,"

*Milburn,* 2024 WL 3210146, at *12, which makes Meyer's opinion concerning the

inadequacy of FMVSS 207 indistinct from Meyer's opinion concerning the defect in the

Subject Vehicle. In other words, according to *Milburn,* simply opining that seats that

comply with FMVSS 207 are inadequate is not the same thing as saying that FMVSS 207

is inadequate.

Meyer also fails to acknowledge how the study detailed in the Back Seat Strength

Research Report ended. It was commissioned in 1998, to be completed in August 1999,

as a result of petitions for changes in FMVSS 207 by Hogan and King. Ex. 4, 2024

ANPRM, at 35; Ex. 6, B.01.19 Back Seat Strength Research Report, at 1. But those

petitions for rulemaking were terminated on November 14, 2004 because:

> NHTSA was unable to fully establish that a need for a stronger
> seat back existed, establish a definitive link between injury
> reductions and potential new regulatory seat back
> requirements, or show that new requirements under
> consideration would not exacerbate risk of neck injuries due to
> whiplash, roof contacts, or rebound.

*Id.* at 38. Thus, the B.01.19 study illustrates that NHTSA engaged in a robust decision-

making process regarding FMVSS 207, testing the suggestion that the regulation was

inadequate for severe rear end crashes repeatedly, but ultimately determining at that time

that the regulation strikes the right balance because it allows for energy absorption while protecting occupants. And, it is worth noting, that at the time the Subject Vehicle was designed and manufactured, that was ***still*** NHTSA's position on FMVSS 207.

Justice Blacklock concurred in *Milburn*, elaborating on the Texas Supreme Court's finding that a comprehensive review of all of the factors that went into NHTSA's decision making is necessary to established inadequacy. He explained that "neither expert aided the jury in understanding the complex landscape confronting NHTSA when it made its decision. And without such testimony, there is no evidentiary basis for a finding that, all things considered, the regulation is 'inadequate to protect the public.'" 2024 WL 3210146, at \*16. Justice Blacklock explained:

> Many, many considerations go into the creation of a federal regulation of this nature, and passenger safety is just one of them. Other obvious considerations are cost, convenience, and practicality. Surely there are others. A fact finder cannot validly judge a federal agency's balancing of these values unless he knows something about how the regulatory process works and has a sense of the many conflicting considerations and competing values—safety just one among them—that contributed to the promulgated regulation.

*Id.* Here, Meyer has not provided an opinion considering the "many considerations" that "go into the creation of a federal regulation of this nature." *Id.* Rather, he has focused on safety alone; specifically, the risks to rear occupants in "dynamic" rear end crashes. Ex. 5, Expert Report of Stephen E. Meyer, P.E., at 17. The point of *Milburn* is that the adequacy of a regulation cannot be judged by one car crash or one seat design alone because, if it was, then the exception would swallow the rule. *See* 2024 WL 3210146, at \*12 ("At bottom, if Milburn's interpretation of the statute is correct, then the analysis is as follows:

11

a defendant is liable for a defective design if the plaintiff proves X, unless the product complies with an applicable federal safety standard, in which case the defendant is not liable unless the plaintiff proves X (which has already been proven)."). Rather, the adequacy of a regulation is assessed against a backdrop of "many, many considerations." *Id.* at *16. Plaintiffs thus cannot rebut the presumption with Meyer's conclusory opinion that FMVSS 207 is inadequate based only upon the reason that it permits seats that are not stiff enough.

When the Oklahoma legislature adopted the rebuttable presumption defense, it made a policy decision "that manufacturers at risk of liability for injuries caused by an allegedly defective design are entitled to rely on a federal agency's cogent determination that the pertinent risks associated with that design are not unreasonable." *Id.* at *14. Here, the Toyota Defendants relied on NHTSA's cogent determination that the risks associated with energy absorbing seats were not unreasonable, and in the face of a lack of evidence by Plaintiffs concerning the complex landscape confronting NHTSA, their products liability claims fails as a matter of law.

B.    <u>Plaintiffs Fail to Show that the Toyota Defendants Withheld or Misrepresented Information Relevant to NHTSA's Determination of Adequacy of FMVSS 207</u>

Plaintiffs have failed to produce any evidence showing that the Toyota Defendants "withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in the action." 76 O.S. § 57.2. The Subject Vehicle complied with FMVSS 207 and Plaintiffs have failed to introduce evidence showing that the Toyota Defendants have withheld or

misrepresented information or material relevant to NHTSA's determination of adequacy of FMVSS 207. Accordingly, the Toyota Defendants are presumed non-liable.

**II.    Plaintiffs' Prayer for Punitive Damages Fails as a Matter of Law Because They Have Introduced No Proof of Culpable Conduct by the Toyota Defendants**

Oklahoma law provides for three categories of punitive damages. 23 O.S. § 9.1. Category I punitive damages may be awarded only if the jury finds that the defendant "has been guilty of reckless disregard for the rights of others." *Id.* § 9.1(B). Category II punitive damages may be awarded only if the jury finds that the defendant acted "intentionally and with malice towards others." *Id.* § 9.1(C). For punitive damages under Category III, the jury must make the same finding as for Category II and, in addition, this Court must find, beyond a reasonable doubt, on the record and out of the presence of the jury, that the defendant engaged in "conduct life-threatening to humans." *Id.* § 9.1(D). All three categories of punitive damages require proof by "clear and convincing evidence."

Even assuming the jury determines Plaintiff proved the existence of an alleged defect, merely proving a defect in a product does not entitle a plaintiff to punitive damages. Negligence in designing, manufacturing, and selling a product is insufficient to rise to the level of reckless disregard of the rights of others and does not constitute an intentional act with malice towards others. To meet the heightened standard for punitive damages, the manufacturer must either "be aware of, or culpably indifferent to, an unnecessary risk of injury." *Thiry v. Armstrong World Indus.*, 661 P.2d 515, 518 (Okla. 1983); *see also Keener Oil & Gas Co. v. Stewart*, 45 P.2d 121, 122 (Okla. 1935) (imposition of punitive damages

13

requires more than a finding of damage caused by negligence; it requires a finding of evil intent).

Generally, "[s]howings necessary for a punitive damage award require a higher standard of culpability, *i.e.*, fraud, oppression or malice which is accompanied with some evil intent or recklessly wanton conduct as is deemed its equivalent in the law." *Hamilton v. Amwar Petroleum Co., Inc.*, 769 P.2d 146, 149 (Okla. 1989). "Malice" is not established unless the Plaintiff shows "evil intent, ill will or hatred" on the part of Toyota in designing, manufacturing, and selling the Subject Vehicle, or the doing of a wrongful act intentionally and without just cause or excuse. *Id.*

Plaintiffs have not supplemented their discovery responses to provide any evidence of fraud, oppression, malice, evil intent, or recklessly wanton conduct by the Toyota Defendants, nor could they, as that evidence does not exist. Absent evidence sufficient to satisfy the punitive damages standard by clear and convincing proof, punitive damages are not recoverable. *See, e.g., Hamilton v. Amwar Petroleum Co.*, 769 P.2d 146, 149-50 (Okla. 1989) (affirming actual damages award and reversing award of punitive damages because "[t]here is no competent evidence the conduct here examined is tainted with actual fraud, oppression or malice, and the conduct disclosed by the record is not such that discloses an evil intent by which malice could be inferred."); *Beneficial Fin. Co. v. Young*, 612 P.2d 1357, 1360-61 (Okla. 1980) (affirming actual damages award, vacating punitive damages award, and ruling that trial court erred in submitting punitive damages to the jury where none of defendant's acts were willful, wanton, or malicious); *Mangrum v. Ford Motor Credit Co.*, 577 P.2d 1304, 1306-07 (Okla. 1978) (affirming actual damages award,

14

vacating punitive damages award, and ruling that the trial court erred in submitting punitive damages to the jury where there was no evidence that defendant acted with a willful, deliberate, or evil intent).

While the question of the Toyota Defendants' alleged negligence is a question for the jury, the question of whether there is *any* evidence in the record showing that the Toyota Defendants acted with wanton disregard for the care of others is a question of law. Plaintiffs' claim for punitive damages should therefore be dismissed.

## CONCLUSION

Plaintiffs have failed to present sufficient evidence that FMVSS 207 is inadequate. Plaintiffs have also failed to present any evidence upon which a jury could find that Toyota acted in reckless disregard for the rights of others, acted intentionally and with malice towards others, or that Toyota engaged in conduct life-threatening to humans, in designing or manufacturing the Subject Vehicle. As such, Toyota is entitled to summary judgment on Plaintiffs' claim for products liability and prayer for punitive damages.

Respectfully submitted,

/s/ Mary Quinn Cooper
Mary Quinn Cooper, OBA #11966
Andrew L. Richardson, OBA #16298
Katie G. Crane, OBA #34575
MCAFEE & TAFT, P.C.
Williams Center Tower II
Two West Second Street, Suite 1100
Tulsa, Oklahoma 74103
Telephone: (918) 587-0000
Telecopier: (918) 599-9317

15

David P. Stone, Texas Bar No. 19289060
Suzanne H. Swaner, Texas Bar No. 90001631
Tracy L.R. Kambobe, Texas Bar No. 24117392
NELSON MULLINS RILEY & SCARBOROUGH, LLP
5830 Granite Park, Suite 1000
Plano, Texas 75024
Telephone: (469) 484-6100
Telecopier: (469) 828-7217

**Attorneys for Toyota Defendants**

## CERTIFICATE OF SERVICE

I hereby certified that on the 23rd day of August, 2024, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. The Clerk of the Court will transmit a notice of electronic filing to the ECF registrants based on the records currently on file.

Glendell D. Nix
S. Shea Bracken
Andy J. Campbell
Nichole Snapp-Holloway
Maples Nix & Diesselhorst, PLLC
15401 North May Ave
Edmond OK  73013

**Attorneys for Plaintiffs**

*/s/ Mary Quinn Cooper*