5:22-cv-151-R
**EXHIBIT**
**Plfs' 9**
Obj to Defs' Motion for Summary Judgment

| Case | Shaffer |
|---|---|
| Transcript | Meyer, Steven 8/13/24 VOL 1 |

| Issue Code | Ex 9 Tr Meyer | | |
|---|---|---|---|
| 1 | 001:01 - 006:11 | 001:01 | IN THE UNITED STATES DISTRICT COURT |
| | | 02 | FOR THE WESTERN DISTRICT OF OKLAHOMA |
| | | 03 | |
| | | 04 | NICK SHAFFER AND CHARLA            ) |
| | | | SHAFFER, INDIVIDUALLY, AND         ) |
| | | 05 | NICK AND CHARLA SHAFFER, AS        ) |
| | | | PARENTS AND NEXT FRIENDS OF        ) |
| | | 06 | HOPE SHAFFER, DECEASED,            ) |
| | | | ) |
| | | 07 | PLAINTIFFS,          ) |
| | | | ) CASE NO. 5:22-CV-00151-R |
| | | 08 | VS.                                ) |
| | | | ) |
| | | 09 | TOYOTA MOTOR CORPORATION,          ) |
| | | | TOYOTA MOTOR NORTH AMERICA,        ) |
| | | 10 | INC., TOYOTA MOTOR ENGINEERING) |
| | | | & MANUFACTURING NORTH AMERICA,) |
| | | 11 | INC., TOYOTA MOTOR                 ) |
| | | | MANUFACTURING MISSISSIPPI,         ) |
| | | 12 | INC., TOYOTA MOTOR SALES, USA,) |
| | | | INC., GULF STATES TOYOTA,          ) |
| | | 13 | INC., AND BOB HOWARD MOTORS,  ) |
| | | | INC., DBA BOB HOWARD TOYOTA,  ) |
| | | 14 | ) |
| | | | DEFENDANTS.          ) |
| | | 15 | _____) |
| | | 16 | |
| | | 17 | |
| | | 18 | |
| | | 19 | DEPOSITION OF EXPERT STEVEN MEYER |
| | | 20 | TUESDAY, AUGUST 13, 2024 |
| | | 21 | |
| | | 22 | |
| | | 23 | |
| | | 24 | JOB NO. 6727061 |
| | | 25 | REPORTED BY:  TAMARA L. CARLSON |
| | | | CSR NO. 12555 |

```
         26
002:01   VIDEOTAPED DEPOSITION OF EXPERT STEVEN MEYER, TAKEN
   02    ON BEHALF OF THE DEFENDANTS AT 9:51 A.M., TUESDAY,
   03    AUGUST 13, 2024, AT 7 WEST FIGUEROA STREET, THIRD
   04    FLOOR, SANTA BARBARA, CALIFORNIA, BEFORE
   05    TAMARA L. CARLSON, CSR NO. 12555, CERTIFIED
   06    SHORTHAND REPORTER IN AND FOR THE STATE OF
   07    CALIFORNIA.
   08
   09
   10
   11
   12    APPEARANCES OF COUNSEL:
   13    FOR THE PLAINTIFFS:
   14           MAPLES NIX & DIESSELHORST, PLLC
                BY:  GLENDELL D. NIX, ESQ.
   15                --- AND ---
                     S. SHEA BRACKEN, ESQ.
   16           15401 NORTH MAY AVENUE
                EDMOND, OKLAHOMA 73013
   17           (405) 544-4006
                GLENDELL@MNDLAWFIRM.COM
   18           SHEA@MNDLAWFIRM.COM
   19    FOR TOYOTA DEFENDANTS:
   20           MCAFEE & TAFT, PC
   21           BY:  ANDREW L. RICHARDSON, ESQ.
                TWO WEST SECOND STREET
   22           SUITE 1100
                TULSA, OKLAHOMA 74103
   23           (918)587-0000
                ANDREW.RICHARDSON@MCAFEETAFT.COM
   24           -- AND ---
   25
003:01   APPEARANCES (CONTINUED):
   02
   03           NELSON MULLINS RILEY & SCARBOROUGH, LLP
                BY:  DAVID P. STONE, ESQ.
   04           5830 GRANITE PARK
                SUITE 1000
   05           PLANO, TEXAS 75024
                (469)484-6100
   06           DAVID.STONE@NELSONMULLINS.COM
   07    ALSO PRESENT:
```

```
08            ED GALLO,
09            VIDEOGRAPHER
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
004:01                     I N D E X
02
03
04   WITNESS            EXAMINATION            PAGE
05   EXPERT STEVEN MEYER
06                      BY MR. STONE             6
07
08
09
10                     E X H I B I T S
11   NO.        PAGE      DESCRIPTION
12   EXHIBIT 1   34       DEPOSITION NOTICE
13   EXHIBIT 2   36       FLASH DRIVE TABLE OF CONTENTS
14   EXHIBIT 3   36       DROPBOX TABLE OF CONTENTS
15   EXHIBIT 4   43       BILLING RECORDS
16   EXHIBIT 5  106       PHOTO
17   EXHIBIT 6  110       ADDITIONAL MATERIALS NOTEBOOK
                          (RETAINED BY WITNESS)
18
19
20
21
22
23
24
```

|   |   |   |   |
|---|---|---|---|
|   |   | 25 |   |
|   |   | 005:01 | SANTA BARBARA, CALIFORNIA |
|   |   | 02 | TUESDAY, AUGUST 13, 2024; 9:51 A.M |
|   |   | 03 |   |
|   |   | 04 | THE VIDEOGRAPHER: We are on the record. |
|   |   | 05 | My name is Ed Gallo. I'm contracted by |
|   |   | 06 | Golkow. Today is August 13 of 2024. The time |
|   |   | 07 | is 9:51 a.m., Pacific time. This is the video |
|   |   | 08 | deposition taken at 7 West Figueroa Street, |
|   |   | 09 | Santa Barbara, California. The name of the case is |
|   |   | 10 | Nick Shaffer versus Toyota Motor Corporation, |
|   |   | 11 | Case No. CVTCV127200151. This is Volume I in the |
|   |   | 12 | videotaped deposition of Steve Meyer. The |
|   |   | 13 | deposition is taken by Attorney David Stone. Would. |
|   |   | 14 | The attorneys introduce themselves and |
|   |   | 15 | state who you represent. |
|   |   | 16 | MR. NIX: Glendell Nix for Plaintiffs. |
|   |   | 17 | MR. BRACKEN: Shea Bracken for Plaintiffs. |
|   |   | 18 | MR. RICHARDSON: Andy Richardson for the |
|   |   | 19 | Toyota defendants. |
|   |   | 20 | MR. STONE: David Stone for Toyota. |
|   |   | 21 | THE VIDEOGRAPHER: The court reporter today |
|   |   | 22 | is Tami Carlson. |
|   |   | 23 | Would the reporter please swear in the |
|   |   | 24 | witness. |
|   |   | 25 | THE REPORTER: Mr. Meyer, please raise your |
|   |   | 006:01 | right hand. |
|   |   | 02 | Do you solemnly swear or affirm the |
|   |   | 03 | testimony you are about to provide in this matter is |
|   |   | 04 | the truth, the whole truth, and nothing but the |
|   |   | 05 | truth? |
|   |   | 06 | THE WITNESS: Yes. |
|   |   | 07 | THE REPORTER: Thank you. |
|   |   | 08 |   |
|   |   | 09 | EXPERT STEVEN MEYER, |
|   |   | 10 | having first been duly sworn, was |
|   |   | 11 | examined and testified as follows: |
| 2 | 006:17 - 007:18 | 006:17 | Q. We are here to take your deposition in a |
|   |   | 18 | case where you've been designated to provide expert |
|   |   | 19 | opinions with regard to design issues; is that |
|   |   | 20 | right? |
|   |   | 21 | A. Yes. |

| | | | |
|---|---|---|---|
| | | 22 | Q. What specifically was your assignment or |
| | | 23 | what were you asked to do? |
| | | 24 | A. I was asked to evaluate the crashworthiness |
| | | 25 | particularly associated with the restraint system of |
| | | 007:01 | the subject 2022 Corolla of relative to rear impact |
| | | 02 | crashworthiness, particularly focusing on the |
| | | 03 | restraint system of the driver and to some extent |
| | | 04 | the right rear position -- I'm sorry, not the |
| | | 05 | driver -- the right front position, front outboard |
| | | 06 | position. In this case, the right front seat was |
| | | 07 | the focus. |
| | | 08 | Q. All right. And when you say "restraint |
| | | 09 | system," what components or systems are you |
| | | 10 | referring to? |
| | | 11 | A. Primarily, in the rear impact what we focus |
| | | 12 | on and the largest part of the restraint system and |
| | | 13 | the most significant part is the seat itself. So |
| | | 14 | for the No. 3 seat, I focused on the rear impact |
| | | 15 | crashworthiness of the right front seat, the No. 3 |
| | | 16 | seat position. I also looked at the belts to some |
| | | 17 | extent, but in a rear impact, the seat itself is the |
| | | 18 | primary restraint component. |
| 3 | 017:13 - 020:04 | 017:13 | Q. So your -- you have an independently held |
| | | 14 | opinion based on independent analysis -- and when I |
| | | 15 | say "independent," I mean separate from |
| | | 16 | Dr. Ziejewski -- that Mr. Voss ramped up over the |
| | | 17 | seat, and that there was head-to-head contact |
| | | 18 | between him and Hope? |
| | | 19 | A. There was intrusion. He ramped up over the |
| | | 20 | seat, and he would have necessarily intruded into |
| | | 21 | her space. That is based upon my testing and my |
| | | 22 | work. And, yes, that is independent of Mr. |
| | | 23 | Ziejewski. Now, of course, I also am aware of and |
| | | 24 | recognize that there's a documented injury to the |
| | | 25 | back of his head and that Hope's skull fracture is |
| | | 018:01 | on the front anterior of her skull, and those two |
| | | 02 | things, of course, go together. So, yes, |
| | | 03 | independently I have concluded that he has intruded |
| | | 04 | into the space sufficient to result in such contact, |
| | | 05 | and there is evidence with respect to both of their |
| | | 06 | injuries to support that. |
| | | 07 | Q. And when you say based on your testing, are |

```
08  you talking about the sled test that you ran?
09       A.   The sled testing as well as Toyota's
10  testing also supports that premise.
11       Q.   All right.  Is there -- what physical
12  evidence, if any, is there that suggests Mr. Voss
13  ramped up over the seat, aside from the injuries?
14       A.   The deformation of the seat, I think, and
15  the belt evidence for both seating positions support
16  that premise.
17       Q.   What in particular about the deformation of
18  the seat?
19       A.   It's plastically deformed, as you would
20  expect.  That plastic deformation has been
21  quantified by Mr. Stevens and I both to be about 14
22  to 15 degrees.  There is going to be additional
23  dynamic deflection of that seatback.  I think I
24  quantified that in my report as an additional 10 to
25  20 degrees.  Mr. Stevens argues that that is not
019:01 going to be present because Hope is back there.
02  There is some stuff in the PowerPoint that I believe
03  establishes he's wrong about that, and, in fact,
04  Mr. Burnett's test itself shows 10 degrees, so
05  certainly there is going to be dynamic.
06           Putting those two things together combined
07  with the ramping that we see in my test as well as
08  the ramping that Toyota's test demonstrate makes
09  clear that the occupant has no choice.  That's the
10  way the physics work, is the occupant will move up
11  the back of the seat as the seat reclines rearward,
12  and he had no choice in doing that.
13       Q.   And when you say the ramping that occurs in
14  Toyota's test, are you referring to this test from
15  which there's an image on Figure 20, formerly
16  Figure 19?
17       A.   In part, yes.
18       Q.   What other part?
19       A.   It's described in here.  I think if we look
20  at all of the testing that we have available, we've
21  got -- Figure 18 and 20 I believe are the same test.
22  That's the 36-kilometer per hour test.
23           If we look at the deflection of the
24  seatback in the 30 kilometer per hour test that
25  Toyota ran, we see the lower torso coming up off the
```

| | | | |
|---|---|---|---|
| | | 020:01 | seat.  We see the occupant ramping there.  That is a |
| | | 02 | lower energy event, of course.  But that certainly |
| | | 03 | tells that's -- and supports that's the way the |
| | | 04 | physics will work. |
| 4 | 020:18 - 022:10 | 020:18 | Q.    Back to my question about the physical |
| | | 19 | evidence that you say supports your opinion that |
| | | 20 | Mr. Voss ramped up over the seat, I heard deflection |
| | | 21 | of the seat, plastic deformation of the seat. |
| | | 22 | Anything else? |
| | | 23 | A.    Plastic deformation, dynamic deformation, |
| | | 24 | so the deformation of the seat, both plastically as |
| | | 25 | well as elastically.  The belt evidence supports |
| | | 021:01 | that, and his injury to the back of his head and |
| | | 02 | Hope's anterior injury, as well as the evidence that |
| | | 03 | supports her being in position as opposed to out of |
| | | 04 | position as your experts have hypothesized, which is |
| | | 05 | ruled out by the belt evidence as well as some of |
| | | 06 | the kinematic problems that I identified with |
| | | 07 | respect to her being hung over the -- off the side, |
| | | 08 | we would expect neck injuries. |
| | | 09 | So putting all that together, I think the |
| | | 10 | witness mark we have on the back of his head, the |
| | | 11 | witness mark on the front of her head, the |
| | | 12 | plastic/elastic deformation of the seat, the general |
| | | 13 | physics are taking him that way; in other words the |
| | | 14 | PDOF, the delta-v, the amount of energy in the |
| | | 15 | collision versus the amount of energy and the |
| | | 16 | capability of the seat all lead to that conclusion |
| | | 17 | and all support that conclusion. |
| | | 18 | Q.    What -- you mentioned evidence on the belt. |
| | | 19 | Are you talking about Mr. Voss's belt, the |
| | | 20 | P3 belt? |
| | | 21 | A.    Yes. |
| | | 22 | Q.    What about the evidence on the P3 belt? |
| | | 23 | A.    His latch plate is rendered consistent with |
| | | 24 | that rear impact and the ramping out from under to |
| | | 25 | some extent. |
| | | 022:01 | Q.    You can get less loading with or without |
| | | 02 | ramping, can't you? |
| | | 03 | A.    What the latch plate loading tells us is |
| | | 04 | that -- is that he's sliding.  He's moving rearward |
| | | 05 | out from under the belt.  And you get that to |

| | | | |
|---|---|---|---|
| | | 06 | varying degrees, yes.  But what I'm getting at is if |
| | | 07 | he didn't ramp at all, it wouldn't have been loaded. |
| | | 08 | There's no reason to load it if he's not ramping. |
| | | 09 | The only way it's loaded is by that lap belt trying |
| | | 10 | to get longer. |
| 5 | 022:15 - 022:25 | 022:15 | Q.    And we've got how much plastic deformation? |
| | | 16 | A.    About 15. |
| | | 17 | Q.    And -- |
| | | 18 | A.    Well, 14, I think. |
| | | 19 | Q.    And dynamically another 10? |
| | | 20 | A.    At least 10.  I estimated 10 to 20, and |
| | | 21 | I'll stick with that.  I think in my report I |
| | | 22 | estimated 10 to 20, and I believe that's fair. |
| | | 23 | Q.    So 14 to -- 24 to 34 degrees of dynamic |
| | | 24 | deflection? |
| | | 25 | A.    Yes. |
| 6 | 026:01 - 026:09 | 026:01 | Q.    And where does that cross-member that's |
| | | 02 | deformed rearward sit in relationship to someone on |
| | | 03 | Mr. Voss's side when he's normally seated? |
| | | 04 | A.    I think we have some pictures of him in the |
| | | 05 | seat that might answer that question.  Let's see. |
| | | 06 | I think it's generally going to be at about |
| | | 07 | shoulder level.  You know, I'm looking across the |
| | | 08 | table at you, and the top of your seat is just below |
| | | 09 | your shoulders.  Now, it's, you know -- but it's |
| 7 | 030:18 - 031:04 | 030:18 | Q.    And do you believe that that laceration is |
| | | 19 | associated with Ms. Shaffer's eyeglasses? |
| | | 20 | A.    It very well could be.  I haven't -- I |
| | | 21 | haven't narrowed that down.  In other words, I |
| | | 22 | haven't -- it's a reasonable shape for that.  So it |
| | | 23 | very well could be.  My -- my opinion is that, |
| | | 24 | generally, the laceration, the bruising that we see |
| | | 25 | in her left eye and the skull fracture are all |
| | | 031:01 | indicative of being hit in head on the front |
| | | 02 | anterior part of the head, and that, ultimately, my |
| | | 03 | opinion is that the only reasonable explanation for |
| | | 04 | that is Mr. Voss, and it seems like if we take the |
| 8 | 033:22 - 034:05 | 033:22 | Q.    Okay.  In your report you note that you |
| | | 23 | believe that the right front seat was unreasonably |
| | | 24 | dangerous and therefore defective relative to rear |
| | | 25 | impact crashworthiness? |
| | | 034:01 | A.    Yes. |

|   |   |   |   |
|---|---|---|---|
|   |   | 02 | Q. Do you have any opinions of defect with |
|   |   | 03 | regard to any other component or system in the |
|   |   | 04 | subject 2020 Corolla? |
|   |   | 05 | A. No. |
| 9 | 040:16 - 041:07 | 040:16 | Q. You mentioned earlier that the interior or |
|   |   | 17 | the front part of Hope's head struck the back of |
|   |   | 18 | Mr. Voss's head or top of his -- what part of |
|   |   | 19 | Mr. Voss's head did -- |
|   |   | 20 | A. I think it was the other way around. I |
|   |   | 21 | think Mr. Voss struck Ms. Shaffer, not Ms. Shaffer |
|   |   | 22 | struck Mr. Voss, but -- |
|   |   | 23 | Q. Good answer, Counselor. |
|   |   | 24 | A. Thank you. |
|   |   | 25 | It's a rear impact. They're all going |
|   |   | 041:01 | rearwards. She's not coming forward. |
|   |   | 02 | So the back of his head -- and I would |
|   |   | 03 | refer to the pictures, and there's some video stills |
|   |   | 04 | that I've included where he's pointing that out, but |
|   |   | 05 | there is -- there is what I would describe as a |
|   |   | 06 | witness mark back there, and he describes an injury |
|   |   | 07 | to the back of his heed. |
| 10 | 048:10 - 048:25 | 048:10 | Having said that, I have identified in some |
|   |   | 11 | cases, depending upon the specific circumstance, |
|   |   | 12 | seats that would perform under a given loading |
|   |   | 13 | environment and be safe for a particular crash. In |
|   |   | 14 | general, if you're asking the question, my belief in |
|   |   | 15 | general is that the seat should be designed to |
|   |   | 16 | protect occupants up to and including the |
|   |   | 17 | 95th percentile type ATD, meaning somebody that is |
|   |   | 18 | reasonably statured like you and I at 200-plus. The |
|   |   | 19 | 95th ATD is 225, 223. So we should be targeting |
|   |   | 20 | that, not 172 for reasons that I've at least brushed |
|   |   | 21 | upon in my report at delta-vs of not 20 or 25 but |
|   |   | 22 | rather 30 to 35, and I think the ABTS seats have |
|   |   | 23 | proven that is an achievable goal. I have tested |
|   |   | 24 | several that performed well, at that energy level, |
|   |   | 25 | and that should be the target. |
| 11 | 077:06 - 077:22 | 077:06 | Q. And the NHTSA has itself observed that |
|   |   | 07 | there are trade-offs with stiffer seats? |
|   |   | 08 | A. I think we all agree with that. I've never |
|   |   | 09 | suggested that it should be infinitely rigid. I |
|   |   | 10 | never suggested that the idea of yielding and |

| | | | |
|---|---|---|---|
| | | 11 | absorbing energy and ride-down is inappropriate. |
| | | 12 | That is -- that is sound.  That is sound science. |
| | | 13 | I think at the same time, however, when |
| | | 14 | we're dealing with a vehicle like the Corolla where |
| | | 15 | you have a backseat, where you have a rear occupant |
| | | 16 | space, that intrusion of the seat into that space is |
| | | 17 | important, and you have to keep track of it.  I |
| | | 18 | mean, effectively, your folks are describing the |
| | | 19 | intrusion in this case as causing the injury.  Well, |
| | | 20 | the intrusion cannot only come from the back, but it |
| | | 21 | can also come from the front.  And in this case, I |
| | | 22 | believe ultimately that it did come from the front. |
| 12 | 078:02 - 080:04 | 078:02 | Q.   You do agree that the Corolla, the subject |
| | | 03 | 2020 Corolla, complied with all the applicable |
| | | 04 | federal highway vehicle safety standards; true? |
| | | 05 | A.   As far as I'm aware, yes. |
| | | 06 | Q.   And it far exceeded the strength |
| | | 07 | requirements of 207? |
| | | 08 | A.   Yes, I think Toyota's 207 test at least |
| | | 09 | establishes that. |
| | | 10 | Q.   Were the NHTSA to knock on your door and |
| | | 11 | say, "Mr. Meyer, we're going to redo 207.  What |
| | | 12 | should it require?" what should it require?  What |
| | | 13 | would you tell them? |
| | | 14 | A.   I would suggest that it not be a moment |
| | | 15 | resistance criteria.  I think the moment resistance |
| | | 16 | is an indicator.  I think certainly you can look at |
| | | 17 | that, and if we look at Mr. Stevens's body block |
| | | 18 | spreadsheet, we can see that when we get to the ABTS |
| | | 19 | levels of moment resistance is when we start to see |
| | | 20 | better performance dynamically, but I would suggest |
| | | 21 | that it ought to be a dynamic requirement, and it |
| | | 22 | ought to, at least in part, consider restraint and |
| | | 23 | containment as well as intrusion into the backseat |
| | | 24 | and the things that I've always talked about, which |
| | | 25 | is the seat has to provide effective restraint -- |
| | | 079:01 | you've got to contain the occupant in the seat -- |
| | | 02 | and it can't result in gross intrusion or |
| | | 03 | potentially injurious intrusion into the rear seat, |
| | | 04 | so it's a vehicle-by-vehicle question in that |
| | | 05 | regard.  If there's no backseat or if it's a sports |
| | | 06 | car or pickup truck that's got a bulkhead behind it, |

|   |   |   |   |
|---|---|---|---|
|   |   | 07 | then that's a different -- that's a different |
|   |   | 08 | criteria or a different set of circumstances than it |
|   |   | 09 | would be in a four-door. |
|   |   | 10 | But I think, ultimately, it would be |
|   |   | 11 | something like I have suggested here, which is I |
|   |   | 12 | don't think we should use the 50th.  I don't think |
|   |   | 13 | that's reasonable in today's world.  172 pound |
|   |   | 14 | occupants are not the norm.  Certainly, it's clearly |
|   |   | 15 | expected that there's going to be occupants much |
|   |   | 16 | heavier than that.  So given that the current |
|   |   | 17 | dummies that we have available, I think using the |
|   |   | 18 | 95th is certainly more appropriate, so we should |
|   |   | 19 | design to contain that, that delta-v, as I have |
|   |   | 20 | said, up to 30 to 35.  The structural integrity of |
|   |   | 21 | the vehicles typically handle that, and if you |
|   |   | 22 | maintain the compartment, the next step is to |
|   |   | 23 | provide effective restraint.  That's a basic |
|   |   | 24 | packaging engineering concept.  You maintain the |
|   |   | 25 | package, and then you provide effective restraint |
|   |   | 080:01 | and/or padding, and that approach applies here |
|   |   | 02 | equally as well. |
|   |   | 03 | So I would suggest a dynamic requirement, |
|   |   | 04 | targeting those levels of performance. |
| 13 | 080:09 - 081:24 | 080:09 | Q.   So how is that -- how is what you say |
|   |   | 10 | accomplished objectively with a repeatable test? |
|   |   | 11 | A.   If you start from the beginning, we're |
|   |   | 12 | typically going to be talking probably about a sled |
|   |   | 13 | test, and/or you could do a 301 type test, but you |
|   |   | 14 | have to do a delta-v that gets up to that level. |
|   |   | 15 | The 301s in this case, for example, are at a |
|   |   | 16 | 25 delta-v. |
|   |   | 17 | The NHTSA recognized, and when they |
|   |   | 18 | upgraded to 301R recognized that, depending upon the |
|   |   | 19 | weight of the vehicle, it could very well be a 30 |
|   |   | 20 | mile an hour delta, and depending upon the vehicle |
|   |   | 21 | it is, which is, again, if we're going to design the |
|   |   | 22 | fuel system and the package to deal with 30, then we |
|   |   | 23 | ought to design the restraint system to do that too. |
|   |   | 24 | So, certainly, you've got to get the pulse up to a |
|   |   | 25 | 30 delta-v, and I would do it with a vehicle |
|   |   | 081:01 | specific pulse as compared to, for example, Ford's |
|   |   | 02 | approach to use a generic pulse.  I don't like that |

| | | | |
|---|---|---|---|
| | | 03 | approach.  I don't think that's fair or reasonable. |
| | | 04 | So based upon the vehicle testing, you can |
| | | 05 | develop a vehicle-specific pulse.  Whether you do it |
| | | 06 | with a sled test or car-to-car or something like a |
| | | 07 | deformable barrier like 301, I don't know that I've |
| | | 08 | got a concern about that. |
| | | 09 | With respect to the containment, I think |
| | | 10 | that is -- requires camera coverage sufficient to |
| | | 11 | evaluate the kinematics of the dummy within the seat |
| | | 12 | and keep them within the seat.  You obviously want |
| | | 13 | to keep the head supported by the head restraint, so |
| | | 14 | you would include that.  If the head gets up over |
| | | 15 | the top of the head restraint and puts the neck in |
| | | 16 | extension, then that's problematic.  If the neck -- |
| | | 17 | the head starts to slide slightly up the head |
| | | 18 | restraint but is still supported, then that may be |
| | | 19 | fine.  But you're going to look at that, and then |
| | | 20 | you're going to have to define, define a reasonable |
| | | 21 | occupant survival space or non-intrusion or |
| | | 22 | non-encroachment zone, if you will, for the rear |
| | | 23 | compartment behind them, and you put all of those |
| | | 24 | together. |
| 14 | 093:21 - 094:03 | 093:21 | Then we go to the next test they run, which |
| | | 22 | is at the 22 delta-v, again, with the 50th, and now |
| | | 23 | we see the occupant coming significantly out of the |
| | | 24 | seat.  We see 43 degrees of elastic or dynamic |
| | | 25 | deflection, 24 degrees of plastic.  That also is |
| | | 094:01 | suggesting and telling me that the seat performance |
| | | 02 | is poor and the design won't hold up in what I |
| | | 03 | believe to be a reasonable loading environment. |
| 15 | 095:14 - 096:09 | 095:14 | Q.    **That test that Toyota ran shows that the** |
| | | 15 | **seat far exceeds the strength requirements of 207,** |
| | | 16 | **doesn't it?** |
| | | 17 | A.    Well, not in and of itself.  The 207 test |
| | | 18 | they ran shows that. |
| | | 19 | Q.    **To limit rearward dynamic deflection to** |
| | | 20 | **about 25 degrees, that seat would have to be** |
| | | 21 | **substantially stronger than the requirements of 207,** |
| | | 22 | **wouldn't it?** |
| | | 23 | A.    I think that's probably true.  I can't |
| | | 24 | imagine how you could do it otherwise. |
| | | 25 | Q.    **So the fact that Toyota did not test the** |

| | | | |
|---|---|---|---|
| | | 096:01 | seat to failure under 207, doesn't really prove |
| | | 02 | anything, does it? |
| | | 03 | A.  That's exactly what I'm saying about their |
| | | 04 | 207 test.  It doesn't prove anything. |
| | | 05 | Q.  If you -- |
| | | 06 | A.  The 207 provides no useful engineering |
| | | 07 | data.  All it does is simply say -- the way they've |
| | | 08 | run it is to simply say that it exceeds 3,300 |
| | | 09 | inches. |
| 16 | 096:21 - 096:24 | 096:21 | But from an engineering point of view, from |
| | | 22 | a design point of view, that tells me nothing about |
| | | 23 | its failure mode or its crashworthiness or what it's |
| | | 24 | going to do dynamically.  It tells me nothing. |
| 17 | 097:10 - 098:02 | 097:10 | Q.  The sled test -- |
| | | 11 | Objection.  Nonresponsive. |
| | | 12 | The sled test run on July 10 was intended |
| | | 13 | to use the same pulse as the 36 KPH sled? |
| | | 14 | A.  Yes, or similar, yes. |
| | | 15 | Q.  With an AM95? |
| | | 16 | A.  Correct. |
| | | 17 | Q.  The sled test does not in any way replicate |
| | | 18 | what happened in the subject crash, does it? |
| | | 19 | A.  It turns out that if you run the numbers |
| | | 20 | from an energy perspective, it's very close to the |
| | | 21 | subject crash. |
| | | 22 | Q.  What were the peak Gs in the subject crash? |
| | | 23 | A.  I'm doing this from memory.  I can look it |
| | | 24 | up, but I want to say around 9.  Am I right? |
| | | 25 | Q.  You are. |
| | | 098:01 | Dr. Z said less than ten. |
| | | 02 | A.  All right. |
| 18 | 099:19 - 100:03 | 099:19 | this accident ever happened.  In other words, I |
| | | 20 | wasn't attempting to reconstruct or recreate this |
| | | 21 | crash.  I was testing the seat's crashworthiness in |
| | | 22 | a more reasonable way than I believe Toyota did with |
| | | 23 | a more appropriate dummy.  Assuming even if I say -- |
| | | 24 | even if I say, okay, let's believe the 22.4 is an |
| | | 25 | appropriate delta-v, which, again, I think that's |
| | | 100:01 | underestimated.  I think that is still too low if, |
| | | 02 | for no other reason than the 301s tell us we can |
| | | 03 | expect more than that. |
| 19 | 102:07 - 102:17 | 102:07 | Q.  Your test does not show the jury what |

| | | | |
|---|---|---|---|
| | | 08 | happened in this crash in terms of seat performance, |
| | | 09 | does it? |
| | | 10 | A.    I think in part it does.  My test shows the |
| | | 11 | jury what the seat can and cannot do at this energy |
| | | 12 | level.  My seat, my test shows the jury that the |
| | | 13 | seat will deform rearward and recline beyond its |
| | | 14 | ability to contain the occupant, and as it does |
| | | 15 | that, the occupant will slide up and over the top of |
| | | 16 | the seat to the extent that angular displacement |
| | | 17 | allows, all of which is what manifested itself here. |
| 20 | 113:07 - 113:23 | 113:07 | Q.    You've got a statement from a bodycam |
| | | 08 | video. |
| | | 09 | I guess is this attributed to Mr. Voss? |
| | | 10 | A.    Yes. |
| | | 11 | Q.    And it says he had a pretty good bruise on |
| | | 12 | his head. |
| | | 13 | Did you look at any radiology to see if |
| | | 14 | there was a bruise that showed up on radiology? |
| | | 15 | A.    Personally, I don't -- no, I did not.  I |
| | | 16 | think one of your experts -- it may be |
| | | 17 | Dr. Camacho -- I think had some -- my recollection |
| | | 18 | is I saw some radiology in maybe one of your |
| | | 19 | experts' reports that appeared to be -- my |
| | | 20 | recollection is that there was, for lack of a better |
| | | 21 | word, a bump on his head that showed up in |
| | | 22 | radiology, but I did not personally or independently |
| | | 23 | attempt to do that. |
| 21 | 156:04 - 157:04 | 156:04 | Q.    Your opinion that the right front seat in |
| | | 05 | the 2020 Corolla is defective is -- what is the |
| | | 06 | specific defect, simply that it yielded too much in |
| | | 07 | this crash? |
| | | 08 | A.    It is defective with respect to rear impact |
| | | 09 | performance, and in a rear impact it is relied upon |
| | | 10 | as the primary restraint component of the restraint |
| | | 11 | system, and its defects are associated with it being |
| | | 12 | underdesigned from a strength energy absorption |
| | | 13 | robustness perspective, so structurally it is too |
| | | 14 | effectively weakened. |
| | | 15 | Q.    Do you have any specific criticisms of any |
| | | 16 | specific components of the seat? |
| | | 17 | A.    No.  I mean, we can look at where the |
| | | 18 | deformation manifests itself, and I have done that, |

| | | | |
|---|---|---|---|
| | | 19 | and it's particularly in the seat cushion frame |
| | | 20 | members. Those could be made stronger. But it's |
| | | 21 | really a function of making the entire seat stronger |
| | | 22 | and more robust and testing it as a system. In |
| | | 23 | other words, one thing that may happen is, if we |
| | | 24 | simply say, make those components a higher strength |
| | | 25 | steel or thicker or change the cross-section without |
| | | 157:01 | designing the rest of the system to accommodate |
| | | 02 | that, you may just change that buckle point to a |
| | | 03 | different buckle point. So it really is a system |
| | | 04 | approach. |
| 22 | 164:21 - 165:07 | 164:21 | Q. You also produced -- as part of |
| | | 22 | your report, there is an appendix to your report, a |
| | | 23 | test on a 2002 Corolla? |
| | | 24 | A. Yes. |
| | | 25 | Q. Tested side-by-side with the Sebring seat? |
| | | 165:01 | A. Correct. |
| | | 02 | Q. Why did you include that? |
| | | 03 | A. Because that is a test that includes more |
| | | 04 | energy than the subject collision into the seat with |
| | | 05 | the Sebring showing that that would not have |
| | | 06 | intruded into Hope's survival space in the way that |
| | | 07 | we believe occurred here -- |
| 23 | 165:09 - 165:13 | 165:09 | A. So that is demonstrating that, had a seat |
| | | 10 | been in place with similar characteristics to the |
| | | 11 | Sebring, then I don't believe there would have been |
| | | 12 | injurious contact with the right rear occupant by |
| | | 13 | the right front occupant. |
| 24 | 165:20 - 166:04 | 165:20 | Q. And do you have any -- do you recall what, |
| | | 21 | in terms of yield strength, how the '02 Corolla seat |
| | | 22 | compares to the 2020 criteria seat? |
| | | 23 | A. I don't, and I included it, not because of |
| | | 24 | the Corolla seat, but rather because the Sebring was |
| | | 25 | demonstrating an alternative design that, obviously, |
| | | 166:01 | was feasible, both technologically and economically, |
| | | 02 | prior to 2020, that was -- had been in production, |
| | | 03 | and a seat of that robustness would have protected |
| | | 04 | Hope in this crash. |
| 25 | 169:01 - 169:01 | 169:01 | STATE OF CALIFORNIA    ) |
| | | | ) ss. |
| | | 02 | COUNTY OF VENTURA    ) |
| | | 03 | I, Tamara L. Carlson, C.S.R. No. 12555, a |

```
04   Certified Shorthand Reporter of the State of
05   California, do hereby certify:
06        That the foregoing proceedings were taken
07   remotely at the time and place herein set forth;
08   that any witnesses in the foregoing proceedings,
09   prior to testifying, were duly sworn; that a record
10   of the proceedings was made by me using machine
11   shorthand, which was thereafter transcribed under my
12   direction; that the foregoing transcript is a true
13   record of the testimony given.
14        Further, that if the foregoing pertains to the
15   original transcript of a deposition in a Federal
16   Case, before completion of the proceedings, review
17   of the transcript [X] was [ ] was not required.
18        I further certify I am neither financially
19   interested in the action nor a relative or employee
20   of any attorney or party to this action.
21   IN WITNESS WHEREOF, I have this date subscribed my
22   name.
23
24                         <%6898,Signature%>
                           Tamara L. Carlson
25                         CSR No. 12555
01   Glendell D. Nix, Esq.
```