## Page 1

CAUSE NO. DC-16-15296

```
BENJAMIN THOMAS REAVIS        ) IN THE DISTRICT COURT OF
AND KRISTI CAROL              )
REAVIS, Individually          )
and as Next Friend of         )
E.R. and O.R., Minor          )
Children,                     )
                              )
     Plaintiffs,              )
                              )
VS.                           ) DALLAS COUNTY, TEXAS
                              )
TOYOTA MOTOR NORTH            )
AMERICA, INC. TOYOTA          )
MOTOR SALES, USA,             )
INC.; TOYOTA MOTOR            )
CORPORATION; MICHAEL          )
STEVEN MUMMAW, and            )
MARK HOWELL,                  )
                              )
     Defendants.              ) 134TH JUDICIAL DISTRICT
```

*************************************************
ORAL AND VIDEOTAPED DEPOSITION OF
STEPHEN CICCONE
JULY 20, 2018
*************************************************

ORAL AND VIDEOTAPED DEPOSITION of STEPHEN CICCONE, produced as a witness at the instance of the Plaintiffs, and duly sworn, was taken in the above-styled and numbered cause on July 20, 2018, from 9:08 a.m. to 3:15 p.m., before Heather L. Garza, CSR, RPR, in and for the State of Texas, recorded by machine shorthand, at the offices of BOWMAN & BROOKE, LLP, 5830 Granite Parkway, Suite 1000, Plano, Texas, pursuant to the Texas Rules of Civil Procedure and the provisions stated on the record or attached hereto; that the deposition shall be read and signed before any notary public.

## Page 2

APPEARANCES

FOR THE PLAINTIFFS:
  Mr. Eric T. Stahl
  THE LAW OFFICES OF FRANK L. BRANSON, P.C.
  4514 Cole Avenue, 18th Floor
  Dallas, Texas 75205
  (214) 522-0200
  estahl@flbranson.com

FOR THE DEFENDANTS:
  Mr. James W. Halbrooks, Jr.
  BOWMAN & BROOKE, LLP
  5830 Granite Park, Suite 1000
  Plano, Texas 75024
  (972) 616-1700
  james.halbrooks@bowmanandbrooke.com

  -and-

  Mr. Victor D. Vital
  BARNES & THORNBURG, LLP
  2100 McKinney Avenue, Suite 1250
  Dallas, Texas 75201
  (214) 258-4200
  victor.vital@btlaw.com

VIDEOGRAPHER:
  Mr. Joseph McDermott

ALSO PRESENT:
  Ms. Dawn Pittman

## Page 3

EXAMINATION INDEX
WITNESS: STEPHEN CICCONE
EXAMINATION                                     PAGE
  BY MR. STAHL                                    6
  BY MR. HALBROOKS                              199

SIGNATURE REQUESTED                             202

REPORTER'S CERTIFICATION                        203

EXHIBIT INDEX
                                                PAGE
CICCONE EXHIBIT NO.1                             20
  Statement of Clarence M. Ditlow
CICCONE EXHIBIT NO.2                             28
  PowerPoint Presentation from Jim Press
CICCONE EXHIBIT NO.3                             38
  Letter dated May 25, 2016
CICCONE EXHIBIT NO.4                             52
  Letter dated June 23, 2016
CICCONE EXHIBIT NO.5                             74
  New York Times Article dated February 6, 2010
CICCONE EXHIBIT NO.6                             82
  Letter dated March 19, 2014
CICCONE EXHIBIT NO.7                             84
  Statement of Facts
CICCONE EXHIBIT NO.8                            100
  Letter dated June 23, 2016
CICCONE EXHIBIT NO.9                            108
  Letter dated February 26, 2010

## Page 4

CICCONE EXHIBIT NO.10                           113
  Congressional Research Service Report dated April 26, 2010
CICCONE EXHIBIT NO.11                           116
  Open Secrets Article by Dave Levinthal dated February 8, 2010
CICCONE EXHIBIT NO.12                           118
  Graph showing Annual Lobbying by Toyota Motor Corp
CICCONE EXHIBIT NO.13                           119
  Politico Article by James Hohmann, Erika Loveley and Jake Sherman dated February 9, 2010
CICCONE EXHIBIT NO.14                           129
  Article from Los Angeles Times dated February 18, 2010
CICCONE EXHIBIT NO.15                           131
  Toyota Timeline
CICCONE EXHIBIT NO.16                           137
  Report of the Committee on Commerce, Science, and Transportation on S. 3302
CICCONE EXHIBIT NO.17                           142
  ProPublica Article
CICCONE EXHIBIT NO.18                           152
  Article Entitled "Did Toyota Pull Strings to Stifle Probes?" Dated February 25, 2010
CICCONE EXHIBIT NO.19                           159
  PowerPoint Presentation dated July 6, 2009
CICCONE EXHIBIT NO.20                           167
  Associated Press Article dated February 21, 2010
CICCONE EXHIBIT NO.21                           186
  Prepared Testimony of Akio Toyoda President, Toyota Motor Corporation Committee on Oversight and Government Reform, dated February 24, 2010

1 (Pa

5:22-cv-151-R
EXHIBIT
Plfs' 12
Obj to Defs' Motion for Summary Judgment
2

Page 5

1  CICCONE EXHIBIT NO.22                                194
      Insurance Journal Article dated March 1,
2     2010
3  CICCONE EXHIBIT NO.23                                194
      Petition dated March 9, 2016
4
   CICCONE EXHIBIT NO.24                                195
5     Petition dated September 28, 2015
6  CICCONE EXHIBIT NO.25                                197
      Miami Herald Article dated March 28,
7     2016
8  CICCONE EXHIBIT NO.26                                198
      The Truth About Cars Article dated May
9     25, 2016

Page 6

1           THE VIDEOGRAPHER: Now on record at 9:08
2  a.m. on July 20th, 2018, for the videotaped deposition
3  of Steve Ciccone.
4           STEPHEN CICCONE,
5  having been first duly sworn, testified as follows:
6           EXAMINATION
7  BY MR. STAHL:
8       Q.  Would you please state your name for the
9  record?
10      A.  My name is Stephen Ciccone.
11      Q.  Mr. Ciccone, my name is Eric Stahl. Do you
12 understand I'm representing the Reavis family in a
13 lawsuit that they have filed against Toyota?
14      A.  I understand that.
15      Q.  Okay. We're here to take your deposition
16 relating to different events concerning the
17 allegations in the case relate to seat back, restraint
18 system failure. Are you aware of that?
19      A.  I am aware of that. Yes.
20      Q.  Okay. What is your title with your employer?
21      A.  My title is group vice president government
22 affairs.
23      Q.  What's the -- who writes your paycheck?
24      A.  I'm employed by TMNA, which is Toyota Motor
25 North America.

Page 7

1       Q.  Okay. How long have you been in that
2  position?
3       A.  I started in October of 2011, in the role I
4  have, so I was hired into this position, and I've
5  stayed in this position.
6       Q.  All right. So you didn't have a prior
7  position with Toyota before the position you are in
8  now?
9       A.  That's correct.
10      Q.  Before Toyota, where were you?
11      A.  I was at Eastman Kodak Company. I spent 24
12 years at Eastman Kodak Company.
13      Q.  Who was your predecessor in your position at
14 Toyota?
15      A.  Her name was Josephine Cooper.
16      Q.  And when you came on, was she still there?
17      A.  No. She had left -- I don't know if it was a
18 full year, but it was -- it was close to one year
19 prior to my arrival.
20      Q.  So who sort of ran you through the ropes of
21 what your job was and what you had to do?
22           MR. HALBROOKS: Object to the form.
23      Q.  (BY MR. STAHL) If your predecessor wasn't
24 there, who taught you how to do your job?
25      A.  Oh, I see. I largely defined the job very

Page 8

1  similar to work I had done at Eastman Kodak Company
2  and so I was hired by a woman by the name of Diane
3  Olgivie who brought me into the company, but was given
4  a lot of flexibility to develop the program.
5       Q.  Do you report to Ms. Olgivie?
6       A.  She's left the company.
7       Q.  Did you at first report to Ms. Olgivie?
8       A.  I did.
9       Q.  What was her title?
10      A.  At the time, I think her title was -- she was
11 the head of something called TMA. It was basically
12 corporate functions.
13      Q.  Okay. So was she the president/CEO of TMA?
14      A.  Neither of those titles -- I can't remember
15 really what her title was. I -- it was -- may have
16 been SVP, senior vice president. I -- I don't
17 remember for sure.
18      Q.  Okay. You are in Washington DC?
19      A.  I am.
20      Q.  Was Ms. Olgivie in Washington DC?
21      A.  No. She was in New York City.
22      Q.  Okay. Were you the senior -- when you were
23 hired, the senior official for Toyota in the
24 Washington DC office?
25      A.  Yes.

Page 9

1  Q. How big is that office?
2  A. That office today or that office when I
3  joined?
4  Q. Tell me both.
5  A. Okay. That office today has a total of about
6  45 people working in the building. Of them, roughly
7  half are part of my team and another half are part of
8  a regulatory team. They do not report to me, but you
9  asked the question am I the senior executive in the
10 office. I am the senior executive in the office,
11 but -- but the reporting line isn't -- isn't that
12 everyone reports. And I would think that overall, the
13 size of the organization from then until now is -- is
14 up maybe 10 percent or so, so not -- not
15 significantly.
16 Q. Okay. So 45 now, maybe 40 when you started?
17 A. I think so, yeah, best of my recollection.
18 Q. Okay. And the regulatory side of DC office,
19 is that headed by Mr. Ro?
20 A. No.
21 Q. Who heads that?
22 A. The regulatory side is headed by a guy by the
23 name of Tom Stricker. He's vice president of the
24 company.
25 Q. What's his relationship with Mr. Ro?

Page 10

1  A. Kevin Ro reports in to Tom Stricker.
2  Q. Do you know a gentleman named Christopher
3  Tinto?
4  A. I do know Chris Tinto.
5  Q. Has he worked with Toyota the same time you
6  did?
7  A. No. Well, yes, let me answer that. He was
8  not in the Washington office, so I've not worked
9  directly with him. He had been in the Washington
10 office prior to my arrival but then he moved out to
11 California and now is in Plano.
12 Q. What's his title; do you know?
13 A. I do not know. It's -- I think it's a group
14 vice president, but I don't -- I don't know his exact
15 title.
16 Q. Do you know what area of responsibility he
17 has?
18 A. It's changed as of late. I think it's about
19 future of mobility.
20 Q. Okay. He had formerly been a vice president
21 of regulatory affairs for Toyota; is that true?
22 A. That's -- that's my recollection, but it was
23 prior to my arrival.
24 Q. Do you know a gentleman named Christopher
25 Santucci?

Page 11

1  A. I do know Christopher Santucci.
2  Q. How do you know him?
3  A. Christopher works in our offices.
4  Q. Still?
5  A. He still works in our offices. He reports in
6  to Kevin Ro.
7  Q. So he's on the regulatory side of things?
8  A. That's correct.
9  Q. And how would you describe your side of
10 things?
11 A. My responsibility and that of my team is to
12 interact with government at a policy and political
13 level, so it's with the white house with senators and
14 members of Congress and their staff and, also,
15 governors and state legislatures.
16 Q. What's your educational background that
17 prepared you for that sort of position?
18 A. So I have an undergraduate degree in English
19 and history, which prepared me to be unemployed, so
20 from there, I went onto get a master's degree in
21 public administration and while there, began as an
22 intern in a place called the New York State Business
23 Council, which represented businesses of New York
24 state. I worked there for 5 years and then 24 years
25 at Kodak and 7 years here at Toyota.

Page 12

1  Q. Okay. Let's talk a little bit more about who
2  the -- the government relations group deals with. You
3  mentioned one of the things you do is you communicate
4  with members of Congress?
5  A. That's correct.
6  Q. So that'd be legislative branch?
7  A. That's correct.
8  Q. Okay. You also say you deal sometimes with
9  the White House, which is the executive branch, right?
10 A. That's correct.
11 Q. Do you deal with any of the administrative
12 agencies who report up to the White House?
13 A. I do. Typically at the -- at the -- at the
14 secretary level, at the top level, the appointed
15 level. So, in other words, think about agencies as
16 having people who are career within that agency, and
17 others who are politically appointed by the president.
18 So I -- my interactions are with people who are
19 appointed by the president.
20 Q. Okay. Do you have any interaction with the
21 Department of Transportation or -- or the NHTSA group?
22 A. Yes. I have had interactions with secretary
23 of DOT, and I have had some interactions with the
24 NHTSA administrator.
25 Q. What kinds of things -- I mean, I understand

3 (Pages 9 to 12)

Page 113

1  Q. Fair enough. I'm going to hand you what I'm
2  marking as deposition Exhibit 10, which is a report
3  from the Congressional Research Service entitled,
4  "Unintended acceleration in passenger vehicles."
5      (Exhibit No. 10 was marked.)
6  Q. (BY MR. STAHL) Let me ask you if you've seen
7  this document before, this report?
8  A. I have not.
9  Q. Your government affairs group, is this the
10 kind of document, since it's specifically about an
11 issue that Toyota dealt with, is this the kind of
12 document that you would follow closely?
13     MR. HALBROOKS: Object to the form.
14 A. I do not know whether we would have followed
15 this closely or not. I mean, we don't spend a lot of
16 time seeing what the congressional research service
17 has done. It's prepared for members of Congress, so
18 we may or may not. Don't know.
19 Q. (BY MR. STAHL) In understanding what members
20 of Congress are doing, what they're looking into, what
21 they're concerned about, isn't a report prepared by
22 the congressional research service at least a good
23 place to start?
24 A. Sure. Uh-huh. Yeah.
25 Q. So is it not customary for Toyota to obtain a

Page 114

1  document like this, which is publicly available, on an
2  issue that Toyota is interested in?
3  A. I'm trying to remember a time where we
4  obtained a congressional research service report and
5  that I read through it and I cannot remember one.
6  Q. Okay.
7  A. That said, this one looks interesting.
8  Q. Page 13 of this report has a section called
9  Toyota lobbying. See where I am?
10 A. I do.
11 Q. In the second paragraph there, it starts off
12 by saying, "In 2009, Toyota had a larger lobbying
13 force in Washington DC than any other foreign
14 automobile company." See that?
15 A. I do.
16 Q. Do you know if that's still true today?
17 A. I suspect it is true today, yes.
18 Q. The next sentence says, "According to the
19 Nonprofit Center for Responsive Politics, Toyota and
20 its subsidiary organizations spent more than $5
21 million and employed 31 lobbyists in 2009." Are those
22 numbers consistent with what Toyota regularly spends
23 on an annual basis for lobbying activities?
24 A. If you don't mind, I'd like to take it in
25 two parts. The first part is -- it

Page 115

1  says, "Organization spent more than 5 million." 5
2  million is my memory of kind of where we are now and
3  probably fairly consistent around that. The
4  clarifications that it employed 31 lobbyists. They
5  must be counting lobbyists that are part of firms that
6  we retain, so they're not Toyota employees. So we
7  employ maybe five or six lobbyists, but there are
8  firms that we retain and they must be counting
9  everyone that works at the firm. Anyway, just a point
10 of clarification, because I don't have 31 employees
11 who are lobbyists.
12 Q. Okay.
13 A. I have six.
14 Q. Then the citation -- there's a footnote after
15 that comment in Exhibit 10 that refers to an article
16 from Dave Levinthal of Open Secrets. Do you see that?
17 A. I do. Uh-huh.
18 Q. Do you know Mr. Levinthal?
19 A. No. I never heard of him.
20 Q. Do you know Open Secrets?
21 A. I do very well.
22 Q. Tell me what your understanding is of what
23 Open Secrets is?
24 A. Open Secrets is a Website that collects
25 information on things like lobbying expenses,

Page 116

1  political action committee, material that's publicly
2  available elsewhere, but they combine it and put it
3  into a Website that's very easy to get to and move
4  around.
5  Q. It's -- is it the customary -- it's the main
6  aggregator that a lot of people in the Washington DC
7  area will use if they want to figure out who's doing
8  what as far as lobbying expenses go?
9      MR. HALBROOKS: Object to the form.
10 A. I can't speak to others, but I use it. I
11 find it to be very easy to use, so I never go to the
12 federal election commission site. That's very
13 difficult. But this is very easy.
14     (Exhibit No. 11 was marked.)
15 Q. (BY MR. STAHL) I'm going to mark as Exhibit
16 No. 11 what I believe to be the article from
17 Mr. Levinthal that the Congressional Research Service
18 is talking about from the Open Secrets Website. First
19 of all, let me ask: You don't remember ever
20 specifically looking at this document, do you?
21 A. No, I've never seen this.
22 Q. You see in the third paragraph that begins in
23 2009 alone, there's that statement about the company
24 employing 31 federal lobbyists, including a former
25 member of Congress and numerous ex-congressional

Page 201

1  WITNESS CORRECTIONS AND SIGNATURE
2  Please indicate changes on this sheet of paper,
   giving the change, page number, line number and reason
3  for the change. Please sign each page of changes.
4  PAGE/LINE    CORRECTION    REASON FOR CHANGE

25  STEPHEN CICCONE

Page 202

1      I, STEPHEN CICCONE, have read the foregoing
   deposition and hereby affix my signature that same is
2  true and correct, except as noted on the previous
   page(s), and that I am signing this before a Notary
3  Public.

   STEPHEN CICCONE

8  STATE OF TEXAS    *
9  COUNTY OF _____ *
10
       Before me, _____, on
11 this day personally appeared STEPHEN CICCONE, known to
   me, or proved to me under oath or through
12 _____ (description of identity card or
   other document), to be the person whose name is
13 subscribed to the foregoing instrument and
   acknowledged to me that they executed the same for the
14 purposes and consideration therein expressed.
15     Given under my hand and seal of office on
   this, the _____ day of _____, 2018.

   NOTARY PUBLIC IN AND FOR THE
19    STATE OF TEXAS
20 My Commission Expires: _____

25 JOB NO. 56362

Page 203

1       CAUSE NO. DC-16-15296
2
   BENJAMIN THOMAS REAVIS ) IN THE DISTRICT COURT OF
3  AND KRISTI CAROL       )
   REAVIS, Individually   )
4  and as Next Friend of  )
   E.R. and O.R., Minor   )
5  Children,              )
                          )
6    Plaintiffs,          )
                          )
7  VS.                    ) DALLAS COUNTY, TEXAS
                          )
8  TOYOTA MOTOR NORTH     )
   AMERICA, INC. TOYOTA   )
9  MOTOR SALES, USA,      )
   INC.; TOYOTA MOTOR     )
10 CORPORATION; MICHAEL   )
   STEVEN MUMMAW, and     )
11 MARK HOWELL,           )
                          )
12   Defendants.          ) 134TH JUDICIAL DISTRICT
13
         REPORTER'S CERTIFICATION
14 ORAL AND VIDEOTAPED DEPOSITION OF STEPHEN CICCONE
           JULY 20, 2018
15
16    I, Heather L. Garza, a Certified Shorthand
17 Reporter in and for the State of Texas, hereby certify
18 to the following:
19    That the witness, STEPHEN CICCONE, was duly sworn
20 by the officer and that the transcript of the oral
21 deposition is a true record of the testimony given by
22 the witness;
23    That the deposition transcript was submitted on
24 _____, 2018, to the witness, or to the
25 attorney for the witness, for examination, signature,

Page 204

1  and return to Worldwide Court Reporters, Inc., by
2  _____, 2018;
3     That the amount of time used by each party at the
4  deposition is as follows:
5     MR. STAHL - 04:22:58
      MR. HALBROOKS - 00:01:14
6
7     That pursuant to information given to
8  the deposition officer at the time said testimony was
9  taken, the following includes counsel for all parties
10 of record:
11    Mr. Eric T. Stahl, Attorney for Plaintiffs.
      Mr. James W. Halbrooks, Jr., Attorney for
12 Defendants.
13    I further certify that I am neither counsel for,
14 related to, nor employed by any of the parties or
15 attorneys in the action in which this proceeding was
16 taken, and further that I am not financially or
17 otherwise interested in the outcome of the action.
18    Further certification requirements pursuant to
19 Rule 203 of TRCP will be certified to after they have
20 occurred.
21    Certified to by me this 23rd day of July, 2018.
22
23
24    _____
      Heather L. Garza, CSR NO. 8262
25    Expiration Date: 12-31-19

Page 205

1  FURTHER CERTIFICATION UNDER RULE 203 TRCP
2  The original deposition was _____ was not _____
3  returned to the deposition officer on _____,
4  2018.
5  If returned, the attached Corrections and
6  Signature page contains any changes and the reasons
7  therefor;
8  If returned, the original deposition was delivered
9  to Mr. Eric T. Stahl, Custodial Attorney;
10  That $_____ is the deposition officer's charges
11  to the Attorney for Plaintiffs, Mr. Eric T. Stahl,
12  TBA# 00794685, for preparing the original deposition
13  transcript and any copies of exhibits;
14  That the deposition was delivered in accordance
15  with Rule 203.3, and that a copy of this certificate
16  was served on all parties shown herein and filed with
17  the Clerk.
18  Certified to by me this _____ day of _____,
19  2018.
20  *(signature)*
    Heather L. Garza, CSR NO. 8262
21  Expiration Date: 12-31-19
22  
    Worldwide Court Reporters, Inc.
23  Firm Registration No. 223
    3000 Weslayan, Suite 235
24  Houston, TX 77027
    800-745-1101
25

52 (Page 205)