IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

NICK SHAFFER and CHARLA SHAFFER, )
Individually, et al.                )
                                    )
            Plaintiffs,             )
                                    )
v.                                  )  Case No. 5:22-cv-00151-R
                                    )
TOYOTA MOTOR CORPORATION, et al.,   )
                                    )
            Defendants.             )

**TOYOTA DEFENDANTS' REPLY BRIEF IN SUPPORT
OF PARTIAL MOTION FOR SUMMARY JUDGMENT**

The Toyota Defendants[1] file this Reply Brief in Support of their Partial Motion for Summary Judgment, ECF No. 116 (the "Motion" or "Mot.").

**I.    *Milburn* is Good Law Upon Which This Court Can Rely**

Attached as Ex. 2 to the Plaintiffs' Response, ECF No. 133, is a Motion for Rehearing in *Milburn*. Therein, the *Milburn* Respondents make two arguments: (1) the FMVSS the defendants alleged to be "at issue" in the case did not govern the product risk that caused the plaintiff's injury; and (2) if Texas's rebuttable presumption applies, the Court should remand to give the plaintiff an opportunity to "satisfy the Court's newly articulated standard for rebutting the presumption." *See* Ex. 2 to Resp. at 1. If the Texas Supreme Court grants rehearing on the first issue presented, then it will not change *Milburn*'s persuasive application to this case because all Parties here agree: FMVSS 207 governs the product risk that, allegedly, caused Hope Shaffer's injury. *See* Resp. at 2 n.1.

---

[1] Terms defined in the Motion are utilized with the same definition herein.

And if the Court grants rehearing on the second issue, that simply means the *Milburn* plaintiff will have a chance to present additional evidence that conforms with the court's articulation of the standard of proof. Therefore, even though the court has not yet finalized the opinion, this Court may rely upon it.

## II.     Plaintiffs' "Proof of Inadequacy" Misunderstands Section 57.2(A)

Plaintiffs' Response misses the point. Even if FMVSS 207 was not "adequate" to protect Hope Shaffer, a rear seat occupant in a severe rear end crash, from injury, that proposition has nothing to do with FMVSS 207's adequacy pursuant to 76 O.S. § 57.2(A). As the plain language of the statute shows, Plaintiffs can only overcome the presumption of non-defect by showing that FMVSS 207 is inadequate to protect the public *as a whole*, not just *children sitting in the rear seat in severe rear end crashes*.

A FMVSS is not inadequate merely because Plaintiffs disagree with the weight NHTSA gave the risk that has actualized for them and others involved in similar crashes, which is all Plaintiffs argue in their Response. As the Oklahoma legislature recognized when it passed Section 57.2, a regulation cannot serve all people in all situations. That is why the rebuttable presumption defense generalizes to the "public." An FMVSS is *only* inadequate if a plaintiff shows that NHTSA did not do any weighing whatsoever, or purposefully ignored data, or relied only on monetary considerations rather than safety considerations when adopting the FMVSS. *Milburn*, 2024 WL 3210146, at *12. FMVSS 207 cannot be inadequate because NHTSA knew about the risk of injury to children sitting in the rear seat in severe rear end crashes and, after careful analysis, did not amend because that would mean if the jury in this case finds the Subject Vehicle's FMVSS 207-compliant

seat was unreasonably dangerous because it was not stiff enough, then it will also find that FMVSS 207 is inadequate. *See id.*

There are risks if a seat is very stiff and risks if a seat absorbs collision energy. *See* Resp. at 16 (quoting Meyer's deposition in which he testified that seats cannot be infinitely rigid and should "balance energy absorption"). Merely saying that NHTSA needs to adopt a regulation that would guard against the type of injury sustained by the type of plaintiff in the type of crash at issue in a case ignores the fact that there has to be a trade-off, *i.e.,* in some car crashes, it would be preferable to have the very stiff seat and in others, it would be preferable to have the energy absorbent seat. Reasonable minds can disagree about what that trade-off should be, and in this case, they do. But reasonable disagreement does not equate to inadequacy.

Plaintiffs point to facts which allegedly show that FMVSS 207 is inadequate because the risk of injury with the current standard outweighs the benefits in ***severe rear end crashes.*** For example, Plaintiffs cite the B.01.19 Seat Back Strength Research Report, attached as Ex. 6 to the Motion, in which NHTSA wrote: "Generally, it is acknowledged that the current standard requires inadequate seat strength to ensure that the seat does not fail when a car is subject to a ***severe rear impact***." Resp. at 19 (emphasis added). All this shows is what Plaintiffs argue in their Response: in a severe rear end crash, FMVSS 207 does not impose limits that would absolutely ensure the seat does not "fail." But that is different than NHTSA saying FMVSS 207 is not adequate to protect the size-diverse public sometimes wearing their seatbelts and sometimes not involved in front, side, rear, and pole crashes at low, moderate, and high speeds sitting in various configurations in the vehicle.

3

Plaintiffs also point out Senators Markey and Blumenthal's letter, which stated: "There has been a longstanding concern that [FMVSS 207] . . . is not sufficient to mitigate injury or death of *rear seat occupant* due to seatback collapse *in a rear-end collision*." Ex. 8 to Resp. at 1 (emphasis added). Again, all this demonstrates is that FMVSS 207 is, according to Plaintiffs, insufficient to protect small rear seat occupants in a severe rear crash. The thesis of the Motion is that NHTSA is charged with a profoundly difficult task: protecting most of the public most of the time from unreasonable injury all while reducing economic costs from motor vehicle crashes. Disagreeing with how NHTSA weighed the risks when considering a particular type of crash is not enough to show inadequacy as a matter of law.

Plaintiffs also argue that because FMVSS 207 "does not account for the presence of an occupant in the front right seat," the regulation is inadequate "to establish any meaningful measure of a seat's performance in a rear impact crash." Resp. at 3. But this argument is just "NHTSA got it wrong" dressed up differently. On November 14, 2006, NHTSA terminated rulemaking proceedings to amend FMVSS 207 after, *inter alia,* "dynamic testing of instrumented test dummies in vehicle seats." *See* Ex. 1, Federal Motor Vehicle Safety Standards; Seating Systems, 69 FR 67068-01, at 1. Specifically, NHTSA stated that it had funded "dynamic sled testing of seats and seat mock-ups in simulated rear impacts at the John Hopkins Applied Physics Laboratory" and had "added extra instrumentation to the test dummies and seats in vehicles tested under FMVSS No. 301 rear impact compliance test program." *Id.* at 2. After analyzing those tests, NHTSA terminated the petitions for rulemaking because "further studies are needed to allow NHTSA to develop a proposed upgrade to FMVSS No. 207 that will effectively balance

seat back strength and interaction with other vehicle attributes." *Id.* NHTSA came to this conclusion because, despite the dynamic tests, "it continues to be a challenge to assess the potential benefits of regulatory strategies for improving seat performance in higher speed rear impacts." NHTSA went on:

> Although there is anecdotal evidence of occupant injury due to poor seat performance resulting in occupant-to-occupant contact . . . it remains a difficult task to assess the scope of this problem on a national level. According to the National Automotive Sampling System (NASS) [data], rear impacts represent about 8 percent of [severe crashes]. In comparison, frontal crashes represent 56 percent; side crashes, 26 percent; and rollover crashes, 8 percent. However, rear impacts cause less than two percent of moderate-to-severe injuries . . . . Thus, in comparison to other crash modes, there is considerably less data available to assess the potential benefits of upgrading FMVSS No. 207 for higher speed rear impacts.

*Id.* at 2-3. Therefore, NHTSA not requiring a dynamic test with a dummy for FMVSS 207 does not show that NHTSA ignored data or too heavily focused on one type of crash rather than a more prevalent type of crash. Rather, all it shows is that Plaintiffs think that NHTSA got it wrong, and that had NHTSA been doing its analysis correctly, it would have pressed on the scale more to take into consideration rare, but severe, crashes.

### III.  Lack of Amendment is Not Evidence of Inadequacy as a Matter of Law

Plaintiffs argue that because NHTSA has not altered FMVSS 207 in almost 50 years, it is inadequate. Resp. at 20. Plaintiffs say technology, in general, has advanced over the past 50 years and a "material change in technology or a proliferation of new studies or data about risks and injuries associated with a compliance product" can be evidence of inadequacy. Resp. at 20 (citing *Milburn,* 2024 WL 320146, at *4.). There's just one

problem with Plaintiffs' argument: they have not identified the "material change in technology" or the "proliferation of a new studies or data" that would point to the necessity of an amendment which in turn would evidence inadequacy. In fact, Plaintiffs' design expert Meyer was unable to articulate, based on today's technology, what the appropriate inch-pound strength value should be for FMVSS 207. *See* Ex. 2, Meyer Dep., at 73:3-6. Rather than take on the Toyota Defendants' recitation of the examples of instances in which NHTSA has granted petitions for rulemaking, conducted studies, and then ultimately, determined that FMVSS 207 is adequate, *See* Mot. at 6-8, Plaintiffs simply declare that lack of amendment equals inadequacy, full stop. That argument ignores the complex considerations inherent in regulation-making highlighted by the court in *Milburn*. 2024 WL 3210146, at *16. Plaintiffs make an ***argument*** that lack of change should equal inadequacy, but point to no evidence that would allow the Court to infer that fact.

**IV.     *Omega Flex* Does Not Preclude Summary Judgment for the Toyota Defendants**

Plaintiffs point to the decision in *Oklahoma Farm Bureau Mut. Ins. Co. v. Omega Flex, Inc.*, No. CIV-22-18-D, 2024 WL 1160925, (W.D. Okla. Mar. 18, 2024), arguing that this Court should follow that court's lead in denying summary judgment based on Section 57.2. In *Omega Flex,* the court found that the plaintiff had presented "minimally sufficient evidence to create a genuine dispute of material fact" because the plaintiff's experts opined that the at-issue regulation was inadequate and/or that the defendant mispresented information relevant to the agency responsible for safety standards. *Id*. at *5. The court held: "the Court is not in a position to weigh the competing expert testimony." *Id.* Thus,

6

according to Plaintiffs, because Meyer has stated that FMVSS 207 is inadequate, there is competing expert testimony precluding summary judgment. Resp. at 22-23.

But in *Omega Flex,* one of the plaintiff's experts opined that the regulation at issue "did not contemplate lightning's effect on [the product]." *Id.* at *4. Here, Meyer has not stated that NHTSA did not consider any risks, or even more specifically, the risk to rear occupants in severe rear end crashes. Nor could he—as there is evidence that NHTSA has considered the risk again and again, but due to lack of evidence, has declined to change the regulation. *See* Mot. at 6-8; 10-11. And contrary to Plaintiffs' argument, the Motion does not rest upon "criticism of [Meyer]." Resp. at 23. Rather, Meyer's opinions fail to interject a question of fact into the inquiry. For example, Meyer opines in his Report:

> During a rear impact event, the seat must be able to adequately resist the force exerted on the seatback from the occupant, as well as be able to withstand and absorb a given amount of energy, all while restraining and containing the occupant within[] the confines of the seat and ensuring the seat does not dangerously intrude into the rear occupant space.

Ex. 17 to Resp. at 27. Plaintiffs suggest that this opinion shows that FMVSS 207 is inadequate. *See* Resp. at 14. But all this shows is that Meyer thinks a seat should be able to do all things in all crash scenarios. That is not the question before the Court on Section 57.2(A). Rather, the question is if Meyer's opinions have shown something other than a disagreement with NHTSA. Has he pointed to a new technological development that NHTSA ignored? Has he pointed to evidence that NHTSA failed to consider the risk to back seat passengers in rear end crashes? Has he gone through the comprehensive factors unrelated to safety that a regulator must also consider before issuing a regulation? He has

not. The Motion does not present a battle of the experts, like it did in *Omega Flex,* because Meyer has not rendered an opinion that is relevant to the fight.

V. **The Toyota Defendants Did Not Withhold Information From NHTSA**

Plaintiffs argue that because TMNA did not provide all the information requested by Senators Blumenthal and Markey in 2016, the Toyota Defendants "withheld or misrepresented information or material relevant to the federal governments or agency's determination of adequacy." 76 O.S. § 57.2.(B). This argument ignores the reality of the rulemaking process. NHTSA promulgates the FMVSS based on congressional direction to do so. 49 U.S.C. § 30101. This fact is recently demonstrated by the Infrastructure Investment and Jobs Act, which directed the Secretary of Transportation to issue an advanced notice of proposed rulemaking to update FMVSS 207. *See* Ex. 2 to Mot. at 1. Therefore, Congress delegates to NHTSA any "determination of adequacy." This makes sense given that NHTSA, not Senators Blumenthal and Markey, are the experts on vehicle safety. The Senators' eight-year-old letter demonstrates the power of a member of Congress to highlight an issue and, if they can get the rest of Congress on board, direct the regulator to assess adequacy.

Additionally, when answering the Senators' letter, TMNA did not withhold any information relevant to any determination of adequacy. TMNA provided information to Senators Markey and Blumenthal to educate them about seat design. *See generally* Ex. 15 to Resp. In so answering, TMNA was aware that it provides "complaints and reports of collapsed front seats [] received in [] the last ten years" and "lawsuits they have been involved in," Resp. at 11, to NHTSA ***directly*** and so, it did not need to provide that

8

information to the Senators, or members of an entity that does not assess adequacy. *See* Ex. 3, Hare Dep., at 27:6-29:6; *See also* 49 C.F.R. 579 (the regulation promulgated by NHTSA pursuant to the TREAD Act which requires an OEM to provide quarterly reports to NHTSA of claims alleging failure of a component in a vehicle). And failing to identify publicly available lawsuits does not mean that the company withheld any information relevant to a determination of adequacy because such information was available to the Senators. Case in point: the Senators referenced the *Reavis* lawsuit in the second paragraph of their letter.

## VI. Plaintiffs Still Fail to Identify Facts Entitling Them to Punitive Damages

Plaintiffs have failed to supplement their discovery responses to provide any evidence of conduct that would substantiate punitive damages and discovery is now closed. For this reason alone, the Motion should be granted. Beyond that, the evidence identified in the Response that allegedly shows the Toyota Defendants recklessly disregarded public safety does not, in fact, make such a showing:

| Plaintiffs' Argument | Toyota Defendants' Response |
|---|---|
| "Interfering and obstructing the rule making process by refusing to respond to inquiries about seat back failures;" Resp. at 27. | As demonstrated *supra*, TMNA's response to Senators Markey and Blumenthal does not demonstrate that it withheld information relevant to NHTSA's determination of adequacy. And to state that TMNA's letter obstruct[ed]" the rulemaking process when NHTSA, not Congress, promulgates FMVSS 207 is misleading. |
| "Carefully constructing their dynamic testing as to ensure safety only to a point that covers '85% of accidents in the field'" "[a]nd refusing to measure the rearward angle at the higher delta-v because it will show the likelihood of | Miyatake's testimony, upon which this proposition relies, does not say this. Miyatake testified that TMC runs two dynamic tests (which are not required by FMVSS) to evaluate seat strength: one at 30 kph and one at 36 kph. *See* Ex. 4, Miyatake Dep. at 43:6-14. In the 30 kph test, which "covers about 85 percent of the accidents in the field," TMC measures the rearward tilting angle of the seat, *id.* at 43:19-24, but in the 36 kph test, TMC "confirm[s] other kinds of |

9

| | |
|---|---|
| failure for the other 15% of rear impact crashes." Resp. at 27. | seat performance," *id.* at 45:4-5. Plaintiffs infer that TMC refuses to measure the rearward tilting angle in the 36 kph test because "it will show the likelihood of failure for the other 15% of rear impact crashes," Resp. at 27, but there is no testimony in the record supporting that inference. Notably, Miyatake did not say that a seat deflects more than 25 degrees in the 36 kph test; nor could he, as TMC does not measure the rearward tilting angle in such a test. |
| "Ignoring notice of specific failures in their own seat backs;" Resp. at 27, and "Ignoring notice from regulatory bodies that studies show weaking in their design in rear impact crashes, putting backseat occupants at risk for unnecessary and serious injuries;" Resp. at 28. | These propositions are not supported by any citations. There is no evidence in the record of which the Toyota Defendants are aware that shows that they "ignore notice of specific failures in their own seats" or "ignore notice from regulatory bodies" regarding the performance of their seats in rear impact crashes. |
| "Continuing to test with outdated models for the average percentile weights of Americans;" Resp. at 28. | Any dynamic testing undertaken by TMC in addition to that required by FMVSS 207 evidence a good faith effort by TMC to make safer seats—not a reckless disregard for public safety. TMC used test dummies with established weights and dimensions accepted across the industry to represent an average occupant. Plaintiffs' argument that this testing is not good enough because it does not utilize the average American male's weight simply nit picks at a test done by TMC to ensure it designs its seats to optimize public safety. |

## CONCLUSION

The Court should grant the Motion and enter an order entering judgment for the Toyota Defendants on Plaintiffs' products liability and punitive damages claims.

Respectfully submitted,

*/s/ Mary Quinn Cooper*
Mary Quinn Cooper, OBA #11966
Andrew L. Richardson, OBA #16298
Katie G. Crane, OBA #34575
MCAFEE & TAFT, P.C.
Williams Center Tower II
Two West Second Street, Suite 1100
Tulsa, Oklahoma 74103
Telephone: (918) 587-0000
Telecopier: (918) 599-9317

David P. Stone, Texas Bar No. 19289060
Suzanne H. Swaner, Texas Bar No. 90001631
Tracy L.R. Kambobe, Texas Bar No. 24117392
NELSON MULLINS RILEY & SCARBOROUGH, LLP
5830 Granite Park, Suite 1000
Plano, Texas 75024
Telephone: (469) 484-6100
Telecopier: (469) 828-7217

**Attorneys for Toyota Defendants**

## CERTIFICATE OF SERVICE

I hereby certified that on the 14th day of October, 2024, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. The Clerk of the Court will transmit a notice of electronic filing to the ECF registrants based on the records currently on file.

Glendell D. Nix
S. Shea Bracken
Andy J. Campbell
Nichole Snapp-Holloway
Maples Nix & Diesselhorst, PLLC
15401 North May Ave
Edmond OK 73013

**Attorneys for Plaintiffs**

*/s/ Mary Quinn Cooper*

11