## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NICK SHAFFER and CHARLA SHAFFER, Individually, and NICK and CHARLA SHAFFER, as Parents and Next Friends of HOPE SHAFFER, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR CORPORATION; TOYOTA MOTOR NORTH AMERICA, INC.; TOYOTA MOTOR ENGINEERING & MANUFACTURING MISSISSIPPI, INC.; TOYOTA MOTOR SALES, USA, INC.; and GULF STATES TOYOTA, INC.;<br><br>Defendants. | No. CIV-22-151-R |

### ORDER

Before the Court is Toyota Defendants' Partial Motion for Summary Judgment [Doc. No. 116]. Plaintiffs Nick Shaffer and Charla Shaffer responded [Doc. No. 133], and Defendants replied [Doc. No. 140]. The matter is now at issue. For the following reasons, the Motion regarding Plaintiffs' strict liability claim is GRANTED.

### Factual Background

Hope Shaffer was killed in a car crash while being driven home from driver's education training. She was sitting in the rear passenger seat of a 2020 Toyota Corolla while another student was driving and the instructor, George Voss, was sitting in the front passenger seat directly in front of her. When the student driver was attempting to exit from the highway, she became confused and came to a nearly complete stop on the off-ramp.

1

The Corolla was rear-ended by a Chevrolet Silverado also attempting to exit the highway. While the student driver and Mr. Voss suffered only minor injuries from the collision, Ms. Shaffer died from blunt force trauma to the front of her skull. What caused the trauma is disputed.

Plaintiffs' theory of the case is that Mr. Voss's head collided with Ms. Shaffer's head due to a defect in the front passenger seat of the subject Corolla [Doc. No. 133 at p. 1]. Specifically, Plaintiffs claim that the front seat was not rigid enough to prevent "ramping,"[1] which can lead to passenger-on-passenger contact in severe collisions. *Id.*

Defendants' theory is that Ms. Shaffer's head hit a narrow, rigid object within the vehicle rather than Mr. Voss's head. Accordingly, they contend that the seat was not defective, and that Mr. Voss did not ramp into the backseat.

Plaintiffs brought suit in state court for (1) strict products liability and (2) common law negligence [Doc. No. 1-1 pp. 10-15]. They additionally sought punitive damages under Oklahoma law. *Id.* at p. 15. Defendants removed the action to this Court [Doc. No. 1] and now seek partial summary judgment on Plaintiffs' strict products liability claim, as well as their prayer for punitive damages. Doc. No. 116 at p. 1.

## Motion for Summary Judgment

### A. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[1] "Ramping" occurs when a seat yields to the point that the seat becomes fully reclined [Doc. No. 116-4 at p. 7].

Civ. P. 56(a). Whether a fact is material is determined by the substantive law at issue, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The movant "always bears the initial responsibility of…identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted). "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citation omitted).

The Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008). At this stage, the Court's role is not "to weigh the evidence and determine the truth of the matter," but to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 249-252.

### B. Strict Liability

Defendants' motion for summary judgment as to Plaintiffs' strict liability claim is premised on the rebuttable presumption of non-liability established in Okla. Stat. tit. 76, § 57.2(A):

> In a products liability action brought against a product manufacturer or seller, there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to a claimant caused by some aspect of the formulation, labeling, or design of a product if the product manufacturer or seller establishes that the formula, labeling, or design for the product complied with or exceeded mandatory safety standards or regulations adopted, promulgated, and required by the federal government, or an agency of the federal government, that were applicable to the product at the time of manufacture and that governed the product risk that allegedly caused harm.

Okla. Stat. tit. 76, § 57.2(A). This presumption may be rebutted by establishing that either:

> 1. The mandatory federal safety standards or regulations applicable to the product and asserted by the defendant as its basis for rebuttable presumption were inadequate to protect the public from unreasonable risks of injury or damage; or
>
> 2. The manufacturer, before or after marketing the product, withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in the action.

Okla. Stat. tit. 76, § 57.2(B)(1)-(2).

The parties agree that FMVSS 207 is the pertinent federal regulation at issue. Doc. No. 133 at n.1. It is likewise undisputed that the front seat of the subject Corolla complied with FMVSS 207 at the time of the collision. *Id*. at p. 5. Thus, the rebuttable presumption set forth in Okla. Stat. tit. 76, § 57.2(A) applies to this case. The overarching issue then is whether Plaintiffs can rebut that presumption using one of the two methods outlined in Okla. Stat. tit. 76, § 57.2(B)(1)-(2).

The Oklahoma Supreme Court has not previously analyzed the presumption. Defendants' invocation of the rebuttable presumption to challenge Plaintiffs' strict liability claim therefore presents a question of first impression. When presented with questions of first impression regarding state law, the Tenth Circuit has defined the contours of a federal court's role as follows:

> In cases arising under diversity jurisdiction, the federal court's task is not to reach its own judgment regarding the substance of the common law, but simply to "'ascertain and apply the state law.'" *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003) (quoting *Huddleston v. Dwyer*, 322 U.S. 232, 236, 64 S.Ct. 1015, 88 L.Ed. 1246 (1944)); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The federal court must follow the most recent decisions of the state's highest court. *Wankier*, 353 F.3d at 866. "Where no controlling decision exists, the federal court must attempt to predict what the state's highest court would do." *Id*. In doing so, it may seek guidance from decisions rendered by lower courts in the relevant state, *Progressive Cas. Ins. Co. v. Engemann*, 268 F.3d 985, 988 (10th Cir. 2001), appellate decisions in other states with similar legal principles, *United States v. DeGasso*, 369 F.3d 1139, 1148 (10th Cir. 2004), district court decisions interpreting the law of the state in question, *Sapone v. Grand Targhee, Inc.*, 308 F.3d 1096, 1100, 1104-05 (10th Cir. 2002), and "the general weight and trend of authority" in the relevant area of law, *MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc.*, 436 F.3d 1257, 1262 (10th Cir. 2006) (internal quotation marks omitted). Ultimately however, the Court's task is to predict what the state supreme court would do.

*Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665-66 (10th Cir. 2007).

The parties have not identified any Oklahoma cases interpreting or applying the presumption.[2] However, the Texas Supreme Court recently applied an identical rebuttable

---

[2] Another court in this district has applied the presumption, but did so in a brief, case-specific manner. *See Okla. Farm Bureau Mut. Ins. Co. v. Omega Flex, Inc.*, No. CIV-22-18-D, 2024 WL 1160925, at *4-5 (W.D. Okla. Mar. 18, 2024). In *Omega Flex*, the court found "minimally sufficient evidence" to defeat the motion for summary judgment where

presumption[3] in a product liability case. *See Am. Honda Motor Co., Inc. v. Milburn*, 696 S.W.3d 612 (Tex. 2024).

In *Milburn*, the Texas Supreme Court reversed a jury verdict in favor of the plaintiff because the plaintiff did not rebut the presumption of non-liability outlined in TEX. CIV. PRAC. & REM. CODE § 82.008(a). *Id*. at 632. Specifically, the plaintiff failed to establish that the pertinent federal regulation—FMVSS 208—was inadequate to protect the public from unreasonable risk of harm. *Id*. The *Milburn* Court noted that "whether a product's design is defective and whether the applicable safety standards with which the design complies are inadequate to protect the public necessarily constitute distinct inquiries." *Id*. at 627. Central to its decision, the Texas Supreme Court stated that to determine whether a regulation is inadequate, the plaintiff must present "a comprehensive review of the various factors and tradeoffs NHTSA considered in adopting [the] safety standard," and that without such a showing, "neither [the court] nor a jury can deem a particular regulation 'inadequate' to prevent an unreasonable risk of harm to the public as a whole." *Id*. at 631. The court specifically observed that the "agency's decision-making is what led to the regulation whose adequacy is being challenged[,]" and that it "fail[s] to see how a jury could second-guess that decision without evaluating the process by which it was reached." *Id*. at 631, n.22.

---

evidence was presented that the regulatory agency did not consider lightning's possible effect on the product. *Omega Flex, Inc.*, 2024 WL 1160925, at *4.

[3] TEX. CIV. PRAC. & REM. CODE § 82.008(a).

Defendants urge this Court to adopt the approach set forth in *Milburn*. Doc. No. 116 at p. 7. Plaintiffs contend that *Milburn* is inapplicable for several reasons, all of which are unavailing. First, Plaintiffs argue that *Milburn* should not be adopted because at the time of the briefing, the *Milburn* plaintiffs had filed a motion for rehearing and the opinion was unpublished. Doc. No. 133 at p. 3. But the motion for rehearing was denied and the opinion was subsequently published. And the opinion would have persuasive value regardless of whether it was published.[4] Second, Plaintiffs contend that *Milburn* is distinguishable due to its different procedural posture. *Id*. But the procedural posture of the present case has little bearing on the Court's interpretation of the requirements established in *Milburn*.

However, given the identical statutory language at issue, as well as the *Milburn* Court's reasoning, the Court predicts that the Oklahoma Supreme Court would find that the *Milburn* Court's framework best honors the Legislature's intent in creating the rebuttable presumption. In holding that defective design and regulatory inadequacy "are necessarily independent inquiries[,]" the *Milburn* Court noted that if "the Legislature merely wanted to highlight such [regulatory] compliance as part of the evaluation of whether a product is defectively designed, it could have done so. Instead, the Legislature

---

[4] Under Oklahoma law, "a statute adopted by Oklahoma from another state which at the time of adoption has been construed by the highest court of the first state, is presumed adopted as so construed; however, if decisions by the highest court of the other state occurred after adoption of the statute in Oklahoma, such decisions are persuasive only." *Krimbill v. Talarico*, 2018 OK CIV APP 37, ¶ 5, 417 P.3d 1240 (citing *In re Fletcher's Estate*, 1957 OK 7, ¶ 25, 308 P.2d 304). Texas adopted the rebuttable presumption in 2003, while Oklahoma adopted the same rebuttable presumption in 2014. *Milburn* was decided in 2024. Thus, the weight of *Milburn* is persuasive, not mandatory.

chose to create an independent presumption that can be rebutted only by establishing the inadequacy of the standard itself, allowing manufacturers to reasonably rely on those standards when designing their products." *Milburn*, 696 S.W.3d at 628-29 (internal citation omitted). It further observed that in the absence of this framework, the presumption would be rendered superfluous. *Id*. at 628.[5] This Court finds *Milburn*'s reasoning persuasive and predicts that the Oklahoma Supreme Court would not interpret the statute in a manner that renders it superfluous.

Having determined that *Milburn*'s interpretation is applicable, the Court turns to whether Plaintiffs have met their burden to show either regulatory inadequacy or the withholding or misrepresenting of information pertinent to NHTSA's determination of FMVSS 207's adequacy.

### 1. Regulatory Inadequacy

In *Milburn*, the Texas Supreme Court made clear that a plaintiff is required to do more than merely prove that the subject product is defective and/or unreasonably dangerous to rebut the presumption of non-liability. *Id*. at 627. "And while evidence tending to show a product was defectively designed can certainly also be relevant to the adequacy of the regulation allowing that design, legally sufficient evidence of the former does not automatically amount to legally sufficient evidence of the latter." *Id*. at 628. The

---

[5] Absent an independent inquiry into the inadequacy of the federal regulation, the *Milburn* Court noted that the function of the presumption would be as follows: "a defendant is liable for a defective design if the plaintiff proves X, unless the product complies with an applicable federal safety standard, in which case the defendant is not liable unless the plaintiff proves X (which has already been proven)." *Id*. at 629.

*Milburn* Court noted that "[a]bsent a comprehensive review of the various factors and tradeoffs NHTSA considered in adopting that safety standard, neither [the Court] nor a jury can deem a particular regulation 'inadequate' to prevent an unreasonable risk of harm to the public as a whole." *Id*. at 631. But it also refused to "foreclose the possibility that subsequent developments could demonstrate that the standard was no longer adequate to protect the public from unreasonable risks of injury at the time of the compliant product's manufacture." *Id*. Specifically, the court observed that "a material change in technology or a proliferation of new studies or data about risks and injuries associated with a compliant product could demonstrate the standard's inadequacy." *Id*.[6]

So while a plaintiff cannot rebut the presumption of non-liability merely by proving that the subject product was defective, it may do so by providing evidence of the "various factors and tradeoffs NHTSA considered in adopting the safety standard" and then showing that the regulatory agency "engaged in an improper or erroneous decision-making process in approving the regulation[.]" *Id*. at 632. A plaintiff may also rebut the presumption by providing evidence of "post-approval developments that call the regulation's adequacy into question[,]" *id.*, such as "a material change in technology or a proliferation of new studies or data about risks and injuries associated with a compliant product[.]" *Id*. at 631.

Here, Plaintiffs do not attempt to meet the standard announced in *Milburn*. As discussed above, they instead unsuccessfully argue that *Milburn* is inapplicable. Applying

---

[6] The *Milburn* Court declined to explain "the parameters of such a showing" but hinted that prior complaints, lawsuits, and recalls were likely some of the evidence that could be used in meeting this standard. *Id*.

the evidence Plaintiffs present in their Response to the *Milburn* standard; the Court finds that it falls short.

First, while Plaintiffs contend that NHTSA "got it wrong" by making the front seat strength requirements too weak to prevent severe injury to rear passengers in severe rear-end collisions, they fail to present evidence of the "various factors and tradeoffs NHTSA considered" in adopting FMVSS 207. Missing is any evidence that NHTSA simply failed to consider increasing the rigidity requirements for front seats. *See Id*., 696 S.W.3d at 629. Rather, Defendants put forth evidence that NHTSA explicitly considered increasing the requirements, but deemed that more data was necessary to determine whether such an increase would have a negative corresponding effect upon front seat passengers. Doc. No. 116-4. So while it is true that the *Milburn* Court did not preclude rebuttal of the presumption by showing that the regulatory agency merely "got it wrong" *Milburn*, 696 S.W.3d at 631, n.23, absent evidence of the considerations undertaken by NHTSA in the regulatory process or evidence that NHTSA simply failed to consider the risk of harm to back seat passengers due to the front seat strength requirements, Plaintiffs cannot meet their burden. And because they presented no such evidence, they accordingly failed to rebut the presumption on that ground.

Second, Plaintiffs emphasize that NHTSA has not updated FMVSS 207 since its inception in 1967. Doc. No. 133 at p. 20. This argument appears to follow from *Milburn*'s second method of rebutting the presumption: post-approval developments. *See Milburn*, 696 S.W.3d at 632. But passage of time alone is insufficient to show inadequacy. While it logically tracks that new technology has been developed since 1967 that could bear upon

seat strength and passenger safety, Plaintiffs cite no such new technology. Instead, they point to a report issued by NHTSA in 1998 that states (1) "it is acknowledged that the current standard [FMVSS 207] requires inadequate seat strength to ensure that the seat does not fail when a car is subject to a severe rear impact[,]" and (2) "advances in technology have made possible significant improvement in the ability of the car seat to add appreciable crash victim occupant protection, especially with the advent of integrated seat concepts[]" [Doc. No. 133-11 at p. 2]. But again, pointing to this report is not sufficient in itself to show that FMVSS 207 is inadequate to protect the public as a whole. As Defendants note in their Reply, FMVSS 207 must provide standards that "protect the size-diverse public sometimes wearing their seatbelts and sometimes not involved in front, side, rear, and pole crashes at low, moderate, and high speeds sitting in various configurations in the vehicle[]" [Doc. No. 140 at p. 3]. Thus, while Plaintiffs' evidence shows that severe injuries to rear passengers in severe rear-end collisions were an issue that was both known to and acknowledged by NHTSA, missing is any evidence that NHTSA erred in its weighing of considerations when deciding against amending FMVSS 207. Without evidence of the considerations undertaken, the jury cannot determine whether FMVSS 207 is inadequate to protect the public as a whole, even in the face of both knowledge of severe injuries and potential advances in technology. *See Milburn*, 696 S.W.3d at 631.

And while it is known that studies have been conducted and data has been collected regarding the risks and injuries associated with FMVSS 207, *see* Doc. No. 116-4, Plaintiffs do not point to a study or a collection of data that supports a reasonable inference of inadequacy when compared to NHTSA's other safety considerations. Plaintiffs do,

however, present evidence of prior instances of severe injuries to back seat passengers in severe rear-end collisions [Doc. No. 133-8 at p.1]. They also provide evidence that Toyota receives complaints of severe injuries caused by severe rear-end collisions [Doc. No. 133-7 at p. 5]. But significantly, there is no evidence that NHTSA disregarded these reports or that, on balance, increasing the seat strength requirement of FMVSS 207 would sufficiently prevent these severe injuries without leading to a higher corresponding risk of injury to other passengers. Thus, like above, Plaintiffs' failure to provide any evidence of NHTSA's regulatory process in either promulgating or failing to amend FMVSS 207 effectively precludes their rebuttal of the presumption under *Milburn*.

Accordingly, Plaintiffs did not rebut the presumption of non-liability by showing regulatory inadequacy as set forth by Okla. Stat. tit. 76, § 57.2(B)(1).

### 2. Withholding or Misrepresenting Information

Plaintiffs second theory of rebuttal is based on Defendants allegedly withholding information from the federal government that was pertinent to the promulgation of FMVSS 207. *See* Okla. Stat. tit. 76, § 57.2(B)(2). Viewing the evidence presented in the light most favorable to Plaintiffs and asserting every reasonable inference in their favor, the record does not support such a finding.

Plaintiffs base their argument on Defendants' incomplete answers to requests for information sent by United States Senators Richard Blumenthal and Edward Markey. Doc. No. 133 at pp. 11-12. But as Defendants note, Plaintiffs' reliance on the senators' letter as rebuttal evidence misconstrues the regulatory process.

The statutory basis for FMVSS 207 is found in 49 U.S.C. § 30101, which states that the purpose of the chapter is "to reduce traffic accidents and deaths and injuries resulting from traffic accidents." 49 U.S.C. § 30101. Pursuant to this purpose, Congress determined that it was necessary to both "prescribe motor vehicle safety standards for motor vehicles and motor vehicle equipment in interstate commerce" and "carry out needed safety research and development." *Id*. at (1)-(2). Under 49 U.S.C. § 30111, the prescription of motor vehicle safety standards such as FMVSS 207 is delegated to the Secretary of Transportation. 49 U.S.C. § 30111(a). NHTSA is delegated the authority to exercise the authority vested in the Secretary of Transportation in the statutes outlined above. 49 C.F.R. § 1.95.

In accordance with the statutory mandate outlined above, NHTSA, under the direction of the Secretary of Transportation, promulgated FMVSS 207 in 1967. As discussed in both Defendants' Exhibit 4 and Plaintiffs' Exhibit 16, since 1967, NHTSA has considered several proposals for rulemaking that would amend FMVSS 207. At each turn, the agency determined that amendment was either not warranted or did not adequately balance the dueling safety considerations regarding seatback rigidity.

The above makes two points clear. First, Congress enabled the Secretary of Transportation (and through subsequent delegation, NHTSA) to promulgate FMVSS 207. And second, the Secretary of Transportation (and NHTSA as the prescribing body) holds the authority to issue and alter motor vehicle safety regulations such as FMVSS 207. Two United States Senators do not have the authority to either issue, amend, or determine the adequacy of FMVSS 207, as this authority has been vested in the Secretary of

13

Transportation and NHTSA pursuant to 49 U.S.C. § 30101, 30111(a), and 49 C.F.R. § 1.95. Thus, when Senators Blumenthal and Markey requested information from Defendants regarding their knowledge of the shortcomings of FMVSS 207, they did not do so with the power to amend FMVSS 207 to make seatbacks more rigid. Accordingly, when Defendants did not directly answer the senators' requests with information they admit was readily available, they did not "with[o]ld or misrepresent[] information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in the action" as required to rebut the presumption. *See* Okla. Stat. tit. 76, § 57.2(B)(2). Therefore, Plaintiffs did not rebut the presumption on their second ground.

Accordingly, Defendants' Motion regarding Plaintiffs' claim for strict liability is GRANTED.

## Conclusion

Accordingly, Defendants' Motion for Summary Judgment is GRANTED regarding Plaintiffs' strict liability claim.

Additionally, the parties are ordered to file a status report within seven days of this Order discussing the effect that this Order has on (1) Plaintiffs' common law negligence claim, and (2) Plaintiffs' motions to compel.

IT IS SO ORDERED this 28th day of February, 2025.

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**