IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

NICK SHAFFER and CHARLA SHAFFER, )
Individually, and NICK AND CHARLA )
SHAFFER, as Parents and Next Friends of )
HOPE SHAFFER, Deceased, )
            )
      Plaintiffs, )
            )
v. )  Case No. 5:22-cv-00151-R
            )
TOYOTA MOTOR CORPORATION, )
TOYOTA MOTOR NORTH AMERICA, )
INC., TOYOTA MOTOR ENGINEERING )
& MANUFACTURING NORTH )
AMERICA, INC., TOYOTA MOTOR )
MANUFACTURING MISSISSIPPI, INC., )
TOYOTA MOTOR SALES, U.S.A., INC., )
GULF STATES TOYOTA, INC., )
            )
      Defendants. )

**TOYOTA DEFENDANTS' REPLY IN FURTHER SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

The Toyota Defendants[1] file this Reply in Further Support of their Motion for Summary Judgment, ECF No. 169 ("MSJ"), and state in support as follows:

**I.  Compliance With a Regulation is a Defense to a Negligence Claim Alleging Injury Caused by Some Aspect of the Design of a Product**

Plaintiffs argue that a product's compliance with a government regulation, like the compliance detailed in 76 O.S. § 57.2(A), is "not a defense to negligence" because "negligence claims are not contingent upon the condition of a product." *See* ECF No. 172, Pls.' Obj. and Resp. to Defs.' MSJ ("Response" or "Resp."), at 1. Rather, Plaintiffs argue, negligence rests upon "conduct" and "the issue of whether conduct was reasonable." *See*

---

[1] Terms defined in the Motion for Summary Judgment are utilized with the same definition herein.

*id*. But this argument is an attempt to utilize semantics to differentiate Plaintiffs' claims for strict liability and negligence that, at heart, rely on the same base theory: that the seat in the Subject Vehicle caused injury to Hope Shaffer by virtue of its design.

The Toyota Defendants had to engage in some conduct to produce a seat that, allegedly, caused injury to Hope Shaffer. That conduct, according to Plaintiffs, is "ignor[ing] their own rear impact seat strength standard as written with a 50th percentile occupant" or engaging in "testing" that is "inadequate and falls below a reasonable standard of care." *See* Resp. at 4 (quoting Meyer Report). But Plaintiffs cannot escape that, according to them, the result of this alleged negligent conduct was a product that caused injury to Hope Shaffer. And § 57.2(A) states that the Toyota Defendants are "not liable for any injury to [Hope Shaffer] caused by some aspect of the . . . design of [the seat]" if the design "complied with or exceeded mandatory safety standards" applicable to the seat.

Plaintiffs argue that strict liability, by its very definition, "eliminates the need for a plaintiff to prove fault." Resp. at 11. Negligence, on the other hand, relies on a showing of fault. *Id.* The Toyota Defendants agree with these bland statements of the law. But here is where the parties diverge: Plaintiffs go on to state, without citation, that "[i]n exchange for using compliance as a defense, strict liability eliminates the need for a plaintiff to prove fault on the part of the manufacturer." *Id*. Huh? *Kirkland v. General Motors Corp.,* the seminal case from the Oklahoma Supreme Court establishing strict liability, did not eliminate the need for a plaintiff to prove fault in a strict liability case **because** compliance with a government regulation is available as a defense. 1974 OK 52, 521 P.2d 1353. Section 57.2(A) does not say that either. Based on timing alone, Plaintiffs' unsupported

contention cannot be correct because *Kirkland* established strict liability in 1974 and § 57.2(A) became law forty years later. And this argument entirely ignores the language in § 57.2(A). Section 57.2(A) does not say that if a product complies with a regulation, it is not **defective**, which would tend to support Plaintiffs' position. Rather, the statute states that a product's compliance with a regulation means a manufacturer is **not liable,** which is neutral language that does not signal the rebuttable presumption defense is only available in a case alleging injury caused by a product pursued under a strict liability theory.

And Plaintiffs' argument that the "compliance-based presumption of non-liability in 76 O.S. § 57.2 only makes sense" in a strict liability case because compliance is dispositive in strict liability, but not in negligence, is contradicted by Tenth Circuit precedent. Resp. at 11. In *Bruce v. Martin-Marietta Corp.*, passengers and relatives of deceased passengers who were killed in an airplane crash brought a product liability action against, *inter alia,* the manufacturer of the plane. 544 F.2d 442 (10th Cir. 1976). There, Plaintiffs alleged that the manufacturer was liable in strict liability and negligence because the passenger seat fastenings and fire safety system in the plane were inadequate. *Id.* at 444. The Tenth Circuit affirmed the trial court's grant of summary judgment to the manufacturer on both claims, in part, because when the plane was built, it met or exceeded all criteria set by the Civil Aeronautics Administration. *Id.* at 447–48. Therefore, the Tenth Circuit found that a claim alleging that a manufacturer's conduct in designing an injury-causing product was negligent could be defeated by a showing of the manufacturer's product's compliance with an at-issue regulation. *See also Kelley ex rel. Kelley v. Rival Mfg. Co.,* 704 F. Supp. 1039, 1044 (W.D. Okla. 1989) (granting summary judgment to crock pot manufacturer on strict

liability and negligence claims because, *inter alia,* the crock pot's "design is fully in compliance with published Underwriters Laboratory standard for such appliances").

Tellingly, Plaintiffs cite no case law to support the proposition that due to the conduct versus product distinction, a statute that excuses a manufacturer from liability if its product complies with an applicable government regulation cannot apply to a negligence claim. Also, Plaintiffs reference Texas's statute multiple times, which contains the identical-to-Oklahoma's rebuttable presumption defense, *compare* 76 O.S. § 57.2(A) *to* Tex. Civ. Prac. & Rem. Code Ann. § 82.008, and defines a "product liability action" to include causes of action based on negligence. *See* Resp. at 1 n.1, 5 n.2; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 82.001(2). Meaning, Texas's statute allows a product's compliance with a government regulation as a defense to a conduct-based negligence claim.

Plaintiffs also argue that a "manufacturing process is something within the defendants' control, *i.e.,* is conduct-based" and "[c]ompliance with the regulations in design has nothing to do with the process chosen to manufacture the product." Resp. at 10. This argument is inapposite because Plaintiffs' negligence claim has never been based on Toyota Defendants' conduct in the **manufacture** of the seat.[2] This argument also ignores that design is "something within the defendants' control, *i.e.,* is conduct-based." Therefore,

---

[2] A manufacturing defect claim in this case would be, for example, that the seat in the Subject Vehicle did not contain all its component parts because they were inadvertently left out during assembly or that the proper strength of steel specified in the design drawing was not used.

4

"compliance with the regulations in design" has everything "to do with the process chosen to" design the product, making § 57.2(A) applicable to Plaintiffs' negligence claim.

Lastly, Plaintiffs cite to *Cherokee Nation v. McKesson Corp.,* 529 F. Supp. 3d 1225 (E.D. Okla. 2021), and state that the court there held that "§ 57.2 does not apply where the claim arises from the defendant's conduct rather than the product itself." Resp. at 12 n.3. That is a gross mischaracterization of the court's ruling, which is perhaps why Plaintiffs chose to place a case that, according to them, entirely supports their position, in a footnote. The court in *McKesson* held that § 57.2 was not applicable because the statute "applies only to products liability actions premised on defective products," and the negligence alleged in *McKesson* related to the distribution of opiates to nonmedical users. 529 F. Supp. 3d at 1238. Because Plaintiffs' negligence claim is premised on an allegedly "defective product[]," the claim fits squarely within § 57.2's purview, unlike the negligence cause of action alleged in *McKesson.*

**II.     "Product Liability Action" as Utilized in Section 57.2(A) is Not Ambiguous**

Plaintiff is right: there is no definition of "product liability action" in the Oklahoma statutes. *See* Resp. at 7. But contrary to Plaintiffs' assertions, lack of a definition does not automatically render the phrase ambiguous. Rather, as detailed in the MSJ, there is a bevy of Oklahoma precedent that shows that "product liability action" unambiguously means any theory of liability premised upon injury caused by a product. *See* MSJ at 12–14. Rather than take on this precedent or provide any contra authority that supports Plaintiffs' position that the phrase excludes causes of action for negligence alleging lack of care in designing a product, Plaintiffs conclusorily state that the Toyota Defendants' arguments

5

concerning the definition of "product liability action" "abrogate[]" the common law. Resp. at 7. But how do Plaintiffs reconcile the Oklahoma Court of Civil Appeal's holding in *Honeywell v. GADA Builders, Inc.*, that "[a] product liability action may be based on a theory of negligence liability or strict products liability" with their stance on abrogation? 2012 OK CIV APP 11, ¶ 24, 271 P.3d 88, 96. The short answer: they don't. And the longer answer: they couldn't, because there is no indication from the express statutory language or Oklahoma common law that "product liability action" excludes negligence actions alleging "injury to a claimant caused by some aspect of the formulation, labeling, or design of a product." 76 O.S. § 57.2(A).

Plaintiffs also argue that the Toyota Defendants' arguments rewrite the Oklahoma legislature's "meaningful" "omission" of a definition of the phrase. Resp. at 7. But this argument is contradicted by the section immediately preceding § 57.2. Section § 57.1 states: "In a product liability action, a manufacturer or seller shall not be liable if the product is inherently unsafe and known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community." Section 57.1 goes on to define "product liability action" for "the purposes of this section" as not including "an action based on manufacturing defect or breach of warranty." *Id.* Section 57.2 follows § 57.1 in the "Torts" title of the Oklahoma statutes. With the limitation of the meaning of a "product liability action" in § 57.1, the Oklahoma legislature demonstrated that they will speak if they wish to exclude certain causes of action in the definition of a "product liability action." The Oklahoma legislature could have easily done the same with § 57.2, adding a subsection to state that the phrase as utilized in § 57.2(A) does not include

6

an action based on negligent design. But the legislature did not. Thus, the legislature's silence is meaningful and supports the Toyota Defendants' position.

### III. Section 57.2(G)'s Provision for a Cause of Action for Seller Negligence Does Not Include a Claim for Negligence Alleging Injury Caused by a Product

Plaintiffs argue that because 76 O.S. § 57.2(G) delineates the elements necessary to prove a that a "product seller other than a manufacturer is liable to a claimant on the basis of negligence," the Oklahoma legislature meant to exclude negligence claims from the meaning of "product liability action" in § 57.2(A). *See* Resp. at 8. But Plaintiffs' argument ignores the difference between negligence actions alleging lack of care in designing a product and negligence actions alleging lack of care in "assembling, inspecting, or maintaining" a product or "passing on warnings or instructions from the product's manufacturer about the dangers and proper use of" a product. *See* 76 O.S. § 57.2(G).

As shown in the MSJ, a "product liability action" includes all causes of action alleging injury caused by a product. This makes sense when one looks at each subsection in § 57.2 focusing on liability for sellers (E and F), as the purpose of those sections is to prevent causes of action against sellers for a product's design when they play no part in designing the product. Section 57.2(G) makes clear, however, that precluding sellers from liability for causes of action alleging product defects does not preclude a lawsuit against a seller that does not hinge on lack of due care in designing a product, but lack of due care unrelated to design of a product. As said best by Plaintiffs in the briefing to the Court on the fraudulent joinder of Bob Howard Motors, Inc.: § 57.2(G) "does **not** relate to product

7

liability actions." *See* ECF No. 46, Pls.' Resp. to Defs.' Supp. Br. In Support of Removal, at 6 (emphasis in original).

Additionally, if a "product liability action" as utilized in § 57.2(A) did not include causes of action for negligence, there would be no need for § 57.2(G) because a cause of action alleging negligence would automatically be exempted. To say it another way, § 57.2(G)'s carveout for a negligence action against a seller for conduct unrelated to the design of the product would be superfluous if negligence in the design of a product was exempted from the definition of "product liability action."

## IV. A Product Liability Action is "Based on an Injury Caused by a Defective Product"

Plaintiffs' argument that the Toyota Defendants "attempt to collapse the term 'defect' into all 'Product Liability Action(s),'" Resp. at 7, ignores Oklahoma precedent. *Honeywell* holds:

> A product liability action is based on an injury caused by a **defective product**. A plaintiff injured by a **defective product** can utilize various theories to recover for injuries caused by the product. A product liability action may be based on a theory of negligence liability or strict products liability.

2012 OK CIV APP 11, ¶ 24 (emphasis added). This doesn't mean that "defect," as the term of art is utilized in strict liability, is a prerequisite to prove negligence. As Plaintiffs' brief shows, the claims are distinct. But missing from Plaintiffs' Response is the way in which their negligence claim alleging that the Toyota Defendants did not act reasonably in response to a known risk to back seat passengers is not based on an injury caused by a product, thus taking it out of the purview of a "product liability action" in Section 57.2(A).

As stated by the Western District of Oklahoma: "[a]lthough it may be unusual for a negligence claim to survive summary judgment where the manufacturer's product liability claim does not, that result is permitted under Oklahoma law." *Haygood v. JWC Env't, Inc.*, No. CIV-20-863-D, 2023 WL 4424273, at *5 (W.D. Okla. July 10, 2023). Plaintiffs have not shown any "unusual" circumstance, spending their Response arguing that such a circumstance could, theoretically, exist without showing that it exists here. Nor could Plaintiffs make such an argument because it would recast their negligence claim supported by expert testimony alleging negligence in design only. *See* MSJ § I.

Plaintiffs are just preaching to the choir when distinguishing the different elements in a cause of action for negligence based on an injury-causing product and a cause of action for strict liability based on an injury-causing product. *See* Resp. at 14. But even though the claims require Plaintiffs to prove different elements does not mean that "a product liability action" in Section 57.2 means **only** strict liability. Plaintiffs can cite the differences between the causes of action all day, but ultimately, if this case goes to trial, Plaintiffs are going to argue that the reason Hope Shaffer suffered a fatal injury was because the seat was too weak. *See* MSJ § I. Whether it be the Toyota Defendants alleged unreasonable conduct in ignoring reports of back seat "failure" (and thus, not making a stronger seat) or the Toyota Defendants' failure to design a stronger seat, the proof centers on damages caused by an alleged injury-inducing product. And a "product liability action" means any action, no matter the theory it is brought under, seeking damages caused by an alleged injury-inducing product.

9

Lastly, the Toyota Defendants do not seek a "sweeping and unsupported interpretation of § 57.2 that would effectively immunize manufacturers from all product-related claims." Resp. at 14. The Oklahoma Legislature passed a statute with certain requirements. If those requirements are met, as they have been here, then a product manufacturer cannot be liable for reasonably relying on the federal government's assessment of a risk. If, in Plaintiffs' view, such a statute "immunizes manufacturers from all product-related claims" then the issue isn't with this Court, it is with the Oklahoma legislature.

## CONCLUSION

For the foregoing reasons, the Toyota Defendants request that the Court grant the MSJ and enter judgment in their favor on all claims asserted by Plaintiffs.

Respectfully submitted,

*/s/ Mary Quinn Cooper*
Mary Quinn Cooper, OBA #11966
Andrew L. Richardson, OBA #16298
Katie G. Crane, OBA #34575
MCAFEE & TAFT, P.C.
Williams Center Tower II
Two West Second Street, Suite 1100
Tulsa, Oklahoma 74103
Telephone: (918) 587-0000
Telecopier: (918) 599-9317

>David P. Stone, Texas Bar No. 19289060
>Suzanne H. Swaner, Texas Bar No. 90001631
>NELSON MULLINS RILEY & SCARBOROUGH, LLP
>5830 Granite Park, Suite 1000
>Plano, Texas 75024
>Telephone: (469) 484-6100
>Telecopier: (469) 828-7217
>
>***Attorneys for Toyota Defendants***

## CERTIFICATE OF SERVICE

I hereby certified that on the 23rd day of April, 2025, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. The Clerk of the Court will transmit a notice of electronic filing to the ECF registrants based on the records currently on file.

>Glendell D. Nix
>S. Shea Bracken
>Andy J. Campbell
>Nichole Snapp-Holloway
>Maples Nix & Diesselhorst, PLLC
>15401 North May Ave
>Edmond OK  73013
>
>***Attorneys for Plaintiffs***

>*/s/ Mary Quinn Cooper*